Fuld, J.
Indicted with two others in February of 1959, under the fictitious designations of “ John Doe ” and “ Bichard Boe ”, the defendants Waterman and Devine were convicted of the crimes of robbery in the first degree, second degree grand larceny and assault.[1] The Appellate Division, by a divided court, reversed the judgments of conviction against both defendants and ordered a new trial. It was the Appellate Division’s view that it was error to receive in evidence incriminatory statements made by the defendant Waterman — in which he also implicated his codefendant Devine—under questioning by a police officer during the period between the return of' the indictment and his arraignment thereon.
The interrogation by the police officer occurred on two separate occasions in June, 1959, the first Tipie being in the Tombs in Manhattan where Waterman was then incarcerated on another *564 charge, the second, in the detention cells of the Bronx County Building. On each occasion, the officer testified, Waterman made a complete confession, admitting that he, Devine and their two accomplices had participated in the robbery in question. And there can be no doubt that the police officer knew that Waterman had been indicted for that crime. As the Appellate Division observed, “ While it is not clear when the substitution of names was made in the indictment, it is clear that at the time of the conversations Waterman was in fact an accused ” and that the officer was in possession of information, given him by one of the other participants in the robbery, implicating Waterman.
The Appellate Division majority regarded our decision in People v. Di Biasi (7 N Y 2d 544) as authority for barring from evidence any admissions obtained from a defendant after indictment under questioning in the absence of counsel. The dissenting Justices, on the other hand, concluded that the decision was to be limited to the special facts there present and was not to be read as prescribing any such flat rule of exclusion.
We are confronted with another facet of the oft-mooted question as to the admissibility of incriminatory statements obtained from an accused as the result of interrogation by police or prosecuting authorities. The problem is that of achieving a balance between the competing interests of society in the protection of cherished individual rights, on the one hand, and in effective law enforcement and investigation of crime, on the other.
In People v. Di Biasi (7 N Y 2d 544, supra), this court condemned secret interrogation of a defendant by law enforcement authorities after indictment as violative of the defendant’s constitutional rights. The decision marked the adoption of the similar view previously expressed by three Judges of this court in dissent in People v. Spano (4 N Y 2d 256, 264-267, revd. on other grounds sub nom. Spano v. New York, 360 IT. ¡3. 315). Such questioning, we held, impinged upon the defendant’s twofold rights to the assistance of counsel and to freedom from testimonial compulsion. (See People v. Di Biasi, 7 N Y 2d 544, 550-551, supra; see, also, People v. Spano, 4 N Y 2d 256, 266-267, supra, per Desmond, J., dissenting.) Although Di Biasi and Spano each involved a *565 capital case, in which the defendant was at the time of the interrogation represented by counsel who had arranged for his surrender on the pending indictment, the broad principle there announced did not turn on those particular circumstances.
The constitutional and statutory right of a defendant to the assistance of counsel at every stage of a criminal cause (N. Y. Const., art. I, § 6; Code Crim. Pro., §§ 8, 188, 308, 699; see People v. Price, 262 N. Y. 410, 412; People v. McLaughlin, 291 N. Y. 480, 482) is limited neither to capital cases (see People v. Koch, 299 N. Y. 378, 381; People v. McLaughlin, 291 N. Y. 480, 482-483, supra; People v. Price, 262 N. Y. 410, 413, supra) nor to the situation where the defendant already has an attorney. The constitutional guarantee ‘ ‘ includes a reasonable time to obtain counsel ”. (People v. Koch, 299 N. Y. 378, 381, supra; see, also, People v. McLaughlin, 291 N. Y. 480, supra; cf. People v. Marincic, 2 N Y 2d 181.) Indeed, in the Pi Biasi case, that the defendant did not ‘1 insist on the presence of his lawyer ’ ’ was regarded as immaterial (7 N Y 2d 544, 552, per Fuld, J., concurring).
It was likewise not decisive of the finding of testimonial compulsion inherent in the post-indictment interrogation in Pi Biasi that the defendant was charged with a capital crime or that he was represented by counsel. The crucial consideration was, rather, that the interrogation to which he was subjected, since it came after indictment, was an impermissible step in the progress of the criminal cause against the defendant.
An indictment is the 1 ‘ first pleading on the part of the people ’ ’ (Code Crim. Pro., § 274) and, where there has been no preliminary examination, marks the formal commencement of the criminal action against the defendant. Since the finding of the indictment presumably imports that the People have legally sufficient evidence of the defendant’s guilt of the crime charged (Code Crim. Pro., § 251), the necessities of appropriate police investigation 1 ‘ to solve a crime, or even to absolve a suspect” cannot be urged as justification for any subsequent questioning of the defendant. (See Spano v. New York, 360 U. S. 315, 323, supra.) Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.
*566 By way of implementation of the constitutional guarantee of the right to counsel, the Legislature has unequivocally declared that “In a criminal action the defendant is entitled * * * 2. To be allowed counsel as in civil actions ” (Code Grim. Pro., § 8, subd. 2). That right must be recognized and enforced not only by the courts when an accused appears without counsel (Code Grim. Pro., §§ 188, 308, 699), but also by the representatives of the People, at least once the criminal action has been formally instituted. As has been aptly observed, ‘ ‘ Depriving a person, formally charged with a crime, of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself ”, and such a deprivation “ after indictment and before trial ’ ’ may, indeed, be tantamount to the denial of “ effective representation by counsel at the only stage when legal aid and advice would help him ”. (Spano v. New York, 360 U. S. 315, 325-326, supra, per Douglas, J., concurring.)
While it has been held that a suspect need not be advised of his rights or privileges when interrogated by the police or prosecuting authorities prior to indictment (see People v. Randazzio, 194 N. Y. 147; People v. Doran, 246 N. Y. 409, 423), the initiation of a criminal action against the accused by the finding of an indictment operates to impose certafii disabilities upon the People. The People would manifestly not be permitted at the trial to call the defendant to the witness stand to establish their case through his testimony (cf. People v. McMahon, 15 N. Y. 384; People v. Oakley, 9 N Y 2d 656; People v. Warner, 9 N Y 2d 670). By the same token, they may not circumvent the defendant’s privilege against self incrimination by introducing into evidence inculpatory statements obtained from him. (following indictment) at a private examination prior to the trial, at least where, as here, he was not first advised of his privilege and his right to the assistance of counsel. Indeed, even before indictment, “ a prospective defendant or one who is a target of an investigation may not be called and examined before a Grand Jury and, if he is, his constitutionally-conferred privilege against self incrimination is deemed violated even though he does not claim or assert the privilege (People v. Steuding, 6 N Y 2d 214, 216-217.)
*567 It has been urged that, “ To maintain the integrity of the judicial process in its use of evidence of criminal guilt, congruence must be maintained between the judicial process and the non-judicial, pre-trial processes with respect to the methods by which evidence of criminal guilt is secured ”. (Beisel, Control Over Illegal Enforcement of the Criminal Law: Role of the Supreme Court [1955], p. 102; see, also, Rothblatt and Rothblatt, Police Interrogation: The Right to Counsel and to Prompt Arraignment, 27 Brooklyn L. Rev. 24.) Di Biasi establishes that such “congruence” must be maintained throughout the course of a formally instituted criminal action, at least following the finding of the indictment.
Our affirmance in People v. Downs (8 N Y 2d 860, cert. den. 364 U. S. 867), upon which the People rely, represents no departure from the principle laid down in Di Biasi. The Downs decision turned on the special circumstances there present. Thus, Downs was explicitly advised that he was not required to make any statements and that he could consult an attorney; his first confession was actually volunteered before any questions were put to him; and at the trial he gave testimony on direct examination in his own defense, as forecast by his counsel in his opening to the jury, which was virtually identical with the statements he made to the authorities before trial.
In conclusion, then, the admission in evidence of the incriminating statements obtained from Waterman as a result of the post-indictment questioning was “ so gross an error as to require reversal, regardless of any other question”. (People v. Di Biasi, 7 N Y 2d, at p. 551, supra.) And the erroneous reception of Waterman’s confession, which implicated his codefendant Devine, likewise warranted the Appellate Division’s reversal of the latter’s conviction in the interest of justice. (See People v. Bonino, 1 N Y 2d 752; People v. Rudish, 294 N. Y. 500.)
The orders of the Appellate Division should be affirmed.
Chief Judge Desmond and Judges Dye and Foster concur with Judge Fuld; Judges Froessel and Burice dissent and vote to reverse upon the dissenting opinion of Botein, P. J., in the Appellate Division; Judge Van Voorhis dissents and votes to reverse in the following memorandum: The rule enunciated in People v. Di Biasi (7 N Y 2d 544) does not apply, it seems to me, *568 to a situation where there has been a “ John Doe ” indictment and the name of the defendant who is actually accused has not been inserted in the proceedings pursuant to section 277 of the Code of Criminal Procedure.
Orders affirmed.

. A codefendant; one Fields, the only one identified by name in the indictment, was arrested shortly after the commission of the crime and subsequently pleaded guilty to a lesser offense.