**Denzel Milton LEE, Appellant,**

**v.**

**UNITED STATES of America,
Appellee.**

**No. 19773.**

United States Court of Appeals
Fifth Circuit.

Sept. 17, 1963.

Rehearing Denied Dec. 23, 1963.

Hutcheson, Circuit Judge, dissented.

---

R. Gordon Gooch, Houston, Tex., for appellant.

Robert B. Ward, Asst. U. S. Atty., Dallas, Tex., for appellee.

Before HUTCHESON, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This case involves the right of an accused to counsel during police interrogation.

The defendant appeals in forma pauperis from a conviction under the Federal Narcotic Drugs Import & Export Act, 21 U.S.C. § 174, for conspiracy to import and distribute heroin. The defendant, Denzel (Buddy) Lee was alleged to have been a member of a narcotics ring, operating in the Dallas-Fort Worth area, which was obtaining heroin smuggled in from Korea by United States Army Sergeant Billy J. Montgomery. Montgomery admitted that he mailed heroin from Inchon, Korea, to John Rule. Both Rule and Lee were accused of receiving the heroin for distribution to two other defendants, John Shelton and H. N. White, who, in turn, sold it to Negro addicts in Fort Worth. Lee was charged specifically with a sale of heroin to Shelton at Dallas in July, 1961, and two sales to Shelton at Corsicana in November, 1961. Lee, Rule, Shelton, White, and Montgomery were brought to trial as co-defendants. Montgomery pleaded guilty. The other four men were convicted and sentenced to terms ranging from eight to ten years. The convictions were based largely upon the testimony of two addicts who were alleged to have been the defendants' co-conspirators.

The appellant contends that his conviction rests in part on hearsay statements of a co-conspirator made out of his presence. He contends also that the

trial judge did not instruct the jury that knowledge of the illegally imported narcotics and knowledge of the conspiracy to import such narcotics were essential elements of the crime with which he was charged. These are serious contentions. We do not discuss them, however, because we base our decision on the error of the trial judge in not excluding the testimony of a special government investigator relating to alleged admissions of the defendant during an ex parte police interrogation.

For purposes of this opinion, the salient facts are few and undisputed. Two special Government agents secretly interrogated Lee in his prison cell. They appeared at the cell door without prior notice. Lee had previously been indicted. He had no counsel before or during the questioning. The agents did not record Lee's statements or reduce them to writing. At the trial, over the objection of the defendant's counsel, one of the agents testified in narrative form to Lee's oral "admissions".

The objection to the admissibility of the special agent's testimony is predicated upon the Fifth and Sixth Amendments and the supervisory power of the federal courts over the administration of federal criminal justice under the McNabb-Mallory doctrine.[1]

■ The basic difficulty this case presents arises from the conflict between society's interest in police interrogation of suspected criminals and the protection of an individual's constitutional rights during such an interrogation. There is general agreement among criminologists that interrogation of criminal offenders is a necessary ingredient of police activities.[2] There is also no doubt

1. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

2. Professor Fred E. Inbau, one of the leading authorities in the field states his position in the form of three separate points:
    1. Many criminal cases, even when investigated by the test qualified police departments, are capable of solution only by means of an admission or confession from the guilty individual or upon the basis of information obtained from the questioning of other criminal suspects.
    2. Criminal offenders, except, of course, those caught in the commission of their crimes ordinarily will not admit their guilt unless questioned under conditions of privacy, and for a period of perhaps several hours.
    3. In dealing with criminal offenders, and consequently also with criminal suspects who may actually be innocent, the interrogator must of necessity employ less refined methods than are considered appropriate for the transaction of ordinary, everyday affairs by and between law-abiding citizens.
    However, Professor Inbau, one of the strongest advocates of police interrogation of suspects writes: "That an accused person is entitled to counsel at the time of trial is a proposition that should and must stand unchallenged. It may also be conceded that the right to counsel should be considered to exist just as soon as the judicial process begins (e. g., preliminary hearing, indictment, etc.) although the case law over the years is to the effect that the right to counsel arises only in a proceeding that adjudicates guilt or innocence; in other words, it arises at the trial itself, and not at any pre-trial hearing. . . . In my judgment the right to counsel at the time of trial, or even at the very start of the judicial process, should be accorded *and provided* to all indigent defendants, insofar as practicable, regardless of whether the case involves a capital or non-capital offense, or even if it amounts only to a misdemeanor. What I do object to is an extension of the right to arrestees, indigent or non-indigent, prior to the start of the judicial process. It is not constitutionally required, and practical considerations will not tolerate such an extension, and particularly so if the extension is supplemented by a rule of court that would nullify, as a violation of due process, a confession obtained during a period of police detention before the start of the judicial process." Inbau, Police Interrogation—A Practical Necessity in Police Power and Individual Freedom 147–149–150 (Ed.Sowle.1962). See also Inbau, Restrictions in the Law of Interrogations and Confessions, 52 N.Y.U.L.Rev. 79 (1957); Inbau, The Confession Dilemma in the United States Supreme Court, 43 Ill.L.Rev. 442 (1948). See Hearings Before Subcommittee No. 2 of the House Committee on the Judiciary on H.R. 3690,

that a police interrogation of a defendant in secrecy, or at least in privacy, is more effective than interrogation in the presence of the defendant's lawyer. But the Sixth Amendment states, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence". The Supreme Court has construed the Amendment to mean that in federal courts a defendant has an absolute right to counsel, and counsel must be provided for defendants unable to employ counsel, unless the right is competently and intelligently waived. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461. Moreover, the Supreme Court now holds that this right is so fundamental to a fair trial and to due process of law that it is made obligatory upon the States by the Fourteenth Amendment. Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

The Sixth Amendment speaks of "Assistance of Counsel for his defence". Giving this clause a narrow construction, the right might be construed to begin at the time of trial. In 1932 Mr. Justice Sutherland, in the Scottsboro Cases, repudiated any such narrow view: "[A defendant] *requires the guiding-hand of counsel at every step of the proceedings against him*". Powell v. Alabama, 1932, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158.

The Supreme Court has not passed directly on the question at issue as it is presented in the case before us. In Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, however, the Court stated that one accused of crime is not to be taken to police headquarters in order for the prosecution to obtain damaging statements, but is to be arraigned promptly, at which time he may obtain counsel, and be fully apprised of his rights. In two decisions involving defendants tried in *State* courts the Court has dealt with the question wheth-

er it was a violation of due process for the State to refuse to allow an accused to have his attorney present during police interrogation. In Crooker v. California, 1958, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed. 2d 1448, a majority of the Court held that denial of counsel was only one factor in determining the legality of the confession obtained during the interrogation and did not in itself render the confession involuntary, unless the defendant "is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairness essential to the very concept of justice.'" 357 U.S. at 439, n. 11, 78 S.Ct. at 1292, 2 L.Ed.2d 1448. Justice Douglas, dissenting in an opinion concurred in by Chief Justice Warren and Justices Black and Brennan, took the view that the defendant was denied due process:

"The mischief and abuse of the third degree will continue as long as an accused can be denied the right to counsel at this the most critical period of the ordeal. For what takes place in the secret confines of the police station may be more critical than what takes place at the trial. * * * That same right [to counsel at the trial] should extend to the pretrial stage. * * * The demands of our civilization expressed in the Due Process Clause require that the accused who wants a counsel should have one at any time after the moment of arrest." 357 U.S. 433, 444–448, 78 S.Ct. 1294–1296, 2 L.Ed.2d 1448.

In Crooker the accused was a college educated man with law school training who knew of his right to keep silent. In a companion case, Cicenia v. LaGay, 1958, 357 U.S. 504, 78 S.Ct. 1297, 2 L. Ed.2d 1523, the accused did not have the intelligence nor legal education of Crooker but he had consulted his lawyer and, presumably, was advised of his rights. Cicenia followed Crooker in holding that,

78th Cong., 1st Sess., ser. 12, at 6–7 (1944); Hearings Before the Special Subcommittee to Study Decisions of the Supreme Court of the United States of

the House Committee on the Judiciary, 85th Cong., 2d Sess., ser. 12, at 40, 42 (1958).

in the circumstances, a confession obtained during a police interrogation after refusal of counsel to the accused, was not necessarily a deprivation of due process. However, Justice Harlan, for the majority, stated that under the McNabb doctrine, "Were this a federal prosecution we would have little difficulty in dealing with what occurred under our general supervisory power over the administration of justice in the federal courts." 357 U.S. at 508–509, 78 S.Ct. at 1299, 1300, 2 L.Ed.2d 1448. Justices Douglas and Black and Chief Justice Warren dissented in Cicenia as they had in Crooker.

Crooker can be read as implying, if it does not hold, that "every suspect in police custody who does not know of his right not to answer police questions has the constitutional right to talk to a lawyer before he can be interrogated. The presumption against waiver of the constitutional right can cast Crooker protection around one who does not request counsel since his failure to ask for a lawyer may buttress the defendant's argument that he did not know his rights." Weisberg, Police Interrogation, in Police Power and Individual Freedom 153, 178 (Ed. Sowle. 1962). Griffith v. Rhay, 9 Cir., 1960, 282 F.2d 711, cert. den'd 1961, 364 U.S. 941, 81 S.Ct. 460, 5 L.Ed.2d 373, adopted this reading of Crooker.

Crooker and Cicenia have an important relation with Spano v. New York, 1959, 360 U.S. 315, 79 S.Ct. 1202, 3 L. Ed.2d 1265. In Spano, as in the instant case, police officers interrogated the prisoner *after indictment* and in the absence of counsel. Before surrendering to the police on a charge of murder, Spano had engaged an attorney who had cautioned him to answer no questions. He was taken to the District Attorney's office and subjected to "massive official interrogation" for eight straight hours until he confessed. Chief Justice Warren for the majority did not reach the question of the right to counsel during interrogation, because the Court found that the confession was obtained by coercion.

Nevertheless, Justice Warren took pains to point out that:

"The police were not therefore merely trying to solve a crime, or even to absolve a suspect. Compare Crooker v. California supra, [US] and Cicenia v. LaGay, [US] supra. They were rather concerned primarily with securing a statement from defendant on which they could convict him. The undeviating intent of the officers to extract a confession from petitioner is therefore patent. When such an intent is shown, this Court has held that the confession obtained must be examined with the most careful scrutiny, and has reversed a conviction on facts less compelling than these. Malinski v. New York, 324 U.S. 401, [65 S.Ct. 781, 89 L.Ed. 1029]." 360 U.S. at 324, 79 S.Ct. at 1207, 3 L.Ed.2d 1265.

Justice Douglas, concurring, joined by Justices Black and Brennan, emphasized the significance of the interrogation *after* indictment:

"But here we deal not with a suspect but with a man who has been formally charged with a crime. The question is whether after the indictment and before the trial the Government can interrogate the accused *in secret* when he asked for his lawyer and when his request was denied. * * * Depriving a person, formally charged with a crime, of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself. * * * This is a case of an accused, who is scheduled to be tried by a judge and jury, being tried in a preliminary way by the police. This is a kangaroo court procedure whereby the police produce the vital evidence in the form of a confession which is useful or necessary to obtain a conviction. They in effect deny him effective representation by counsel. This seems to me to be a flagrant violation of the principle announced in Powell v. Alabama, [US] supra, that

the right of counsel extends to the preparation for trial, as well as to the trial itself. As Professor Chafee once said, 'A person accused of crime needs a lawyer right after his arrest probably more than at any other time.' Chafee, Documents on Fundamental Human Rights, Pamphlet 2 (1951–1952), p. 541. When he is deprived of that right after indictment and before trial, he may indeed be denied effective representation by counsel at the only stage when legal aid and advice would help him." 360 U.S. at 325, 79 S.Ct. at 1208, 3 L.Ed.2d 1265.

Justice Stewart, joined by Justices Douglas and Brennan, also wrote a concurring opinion. He regarded indictment as the start of the trial:

"Let it be emphasized at the outset that this is not a case where the police were questioning a suspect in the course of investigating an unsolved crime. * * * When the petitioner surrendered to the New York authorities he was under indictment for first degree murder. * * * Our Constitution guarantees the assistance of counsel to a man on trial for his life in an orderly courtroom, presided over by a judge, open to the public, and protected by all the procedural safeguards of the law. Surely a Constitution which promises that much can vouchsafe no less to the same man under midnight inquisition in the squad room of a police station." 360 U.S. at 327, 79 S.Ct. at 1209, 3 L.Ed.2d 1265.

In view of Justice Warren's dissent in Crooker and Cicenia and the concurring opinions of Justices Black, Douglas, Brennan, and Stewart in Spano, it now appears that a majority of the justices of the Supreme Court recognize the constitutional right to counsel during police interrogation in cases involving prosecutions by the State. It also appears that in federal prosecutions the McNabb-Mallory doctrine promotes the likelihood of the Supreme Court's being receptive to the recognition of the right. See Justice Harlan's opinion, concurred in by Justice Clark, inter alia, in Cicenia.

Two recent cases have touched upon the time right to counsel accrues. In Feguer v. United States, 8 Cir., 1962, 302 F.2d 214, 252, the defendant contended that certain statements he made were inadmissible in evidence because they were made to investigating officers in an interrogation at which his lawyer was not present. The court observed that the Sixth Amendment "affords no comfort for the defense," because "Assistance of Counsel" applies "only *after* a defendant is formally charged by indictment or information". Feguer's statements were all made *before* indictment. In Massiah v. United States, 2 Cir., 1962, 307 F.2d 62, agents of the Bureau of Narcotics testified that they had installed a transmitter in an informer's automobile and had monitored the defendant's conversations with a codefendant who had been coached by the agents. A majority of the Court pointed out that the defendant was not in custody while being "interrogated" and that the "interrogation" was by a co-defendant. The Court therefore rejected the defendant's contention that the evidence was inadmissible. Judge Hays, dissenting, found that in the light of Spano and "[c]onsidering that a stricter standard of conduct is imposed by the federal courts on federal law enforcement officials", the right to counsel was violated. "Certainly, if such a rule is to have any efficacy it must apply to indirect and surreptitious interrogations as well as to those conducted in the jailhouse." 307 F.2d 72.

In Spano, which arose in New York, the defendant had requested and had been refused access to his attorney. In People v. Di Biasi, 1960, 7 N.Y.2d 544, 200 N.Y.S.2d 21, 166 N.E.2d 825, the defendant, during a police interrogation, did not request his attorney nor did he refuse to answer any questions because his attorney was not present. He made no "confession" of the homicide for which he was indicted but did admit that

he had a "misunderstanding" with the victim and fled to avoid prosecution. At the trial, a police officer testified to the defendant's oral admissions. Basing its decision on the concurring opinion in Spano, the New York Court of Appeals, reaching an opposite result to that reached in People v. Spano, 1958, 4 N. Y.2d 256, 173 N.Y.S.2d 793, 150 N.E.2d 226, rev'd 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, held that the admission of evidence obtained from the police interrogation of the defendant in the absence of counsel after indictment was a violation of due process. The New York Court has followed Di Biasi in two recent cases, People of State of N. Y. v. Waterman, 1961, 9 N.Y.2d 561, 216 N. Y.S.2d 70, 175 N.E.2d 445 and People of State of New York v. Meyer, 1962, 11 N.Y.2d 162, 227 N.Y.S.2d 427, 182 N.E. 2d 103. In each decision the Court recognized an accused's absolute right to counsel during interrogation *after* indictment:

> "Since the finding of the indictment presumably imports that the People have legally sufficient evidence of the defendant's guilt of the crime charged (Code Crim.Pro. § 251), the necessities of appropriate police investigation 'to solve a crime, or even to absolve a suspect' cannot be urged as justification for any subsequent questioning of the defendant. (Citation omitted.) Any secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime." People of State of New York v. Waterman, 9 N.Y.2d 561, 216 N.Y.S.2d 70, 74–75, 175 N.E.2d 445, 447–448 (1961).

We return now to the facts in the case before us. Lee was arrested January 25, 1962, on a warrant issued pursuant to his indictment. Fifteen days later, two special agents of the Bureau of Narcotics went to Lee's cell in the Dallas County jail for the purpose of interrogating him. Judging from the fifteen day delay, there was no urgency requiring interrogation before Lee obtained counsel. Without notice, Lee had no opportunity to consult with counsel before or during the questioning. The interrogation was secret. No reporter was present. No tape recorder was used. At the trial, one of the agents, over objections of Lee's counsel, testified to Lee's oral admissions.

This case illustrates the extent to which an indicted defendant may be prejudiced when he is questioned after indictment in the absence of an attorney.

To begin with, such questioning is not police interrogation of a suspect; it is a prosecutory device to make an indicted defendant incriminate himself. The existence or nature of the admissions can be contested only by the defendant. To do so, he would be forced to relinquish his privilege against self-incrimination. Police must be given considerable latitude in questioning suspects and witnesses when an effort is being made to determine whether there is probable cause to believe that a crime has been committed. But the situation is vastly different after a suspect has been formally indicted for a crime. The urgency disappears. The whole power of the Government is directed against one imprisoned individual, as preparations are made for his prosecution before a judge and jury. In these circumstances procedural safeguards must attach, else the safeguards which we think of as essential to a fair trial become a mere formality.

Had an attorney been present it is likely that if he were "worth his salt," as Justice Jackson put it, he would have told the defendant "in no uncertain terms to make no statement to [the] police." [3]

---

3. Watts v. Indiana, 1949, 338 U.S. 49, 59, 69 S.Ct. 1347, 1358, 93 L.Ed. 1801. Continuing, Justice Jackson observed:

"If the State may arrest on suspicion and interrogate without counsel, there is no denying the fact that it largely negates

Even if not fully worth his salt, we may be sure that he would have insisted that any admission would have to be in the form of a written statement, signed or approved by the accused or a record of some kind made and attested to by a court reporter. There would have been some assurance of the accuracy of the agent's recital of what Lee reputedly admitted. See Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441. Here we have a narrative of oral conclusory statements, the accuracy of which is dependent upon the memory and conscience of the inquisitor. It has been well said:

> "No other case comes to mind in which an administrative official is permitted the broad discretionary power assumed by the police interrogator, together with the power to prevent objective recordation of the facts. The absence of a record makes disputes inevitable about the conduct of the police and, sometimes, about what the prisoner has actually said. It is secrecy, not privacy, which accounts for the absence of a reliable record of interrogation proceedings in a police station. If the need for some prejudicial questioning is assumed, privacy may be defended on grounds of necessity; secrecy cannot be defended on this or any other ground." Weisberg, Police Interrogation, Police Power and Individual Freedom, 153, 180 (Ed. Sowle. 1962).

■ That is not all. The Government's brief concedes that secret, ex parte interrogations of defendants are not conducted when a prisoner has counsel. Presumably, legal ethics forbid a United States Attorney or a Government agent to bypass the lawyer of a defendant fortunate enough to have the means to engage counsel. This is a proper ethic for lawyers. But here the effect is to allow the prosecution to take advantage of an indigent prisoner without counsel, imperiling his constitutional rights by subjecting him to questioning intended to convict him, while recognizing an accused's freedom from secret inquisition if he can afford counsel. This practice carries secret questioning to the point of invidious discrimination against indigent defendants.

■ The record does not show whether Lee requested counsel or not at the time his interrogators appeared or before they opened his cell door. He was in a cell in Dallas (after being removed from Houston) and was not taken before a judge until the day of the trial. Further, the only "record" which could show whether Lee requested counsel on the interrogation is the memory of the interrogator. "But it is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request." Carnley v. Cochran, 1962, 369 U.S. 506, 513, 82 S.Ct. 884, 889, 8 L.Ed. 2d 70. Nor can there be a presumption of waiver of counsel. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461. Lee's failure to request a lawyer, if indeed he did fail, is no excuse for the oppressiveness of a procedure

the benefits of the constitutional guaranty of the right to assistance of counsel. Any lawyer who has ever been called into a case after his client has 'told all' and turned any evidence he has over to the Government, knows how helpless he is to protect his client against the facts thus disclosed.

"I suppose the view one takes will turn on what one thinks should be the right of an accused person against the State. Is it his right to have the judgment on the facts? Or is it his right to have a judgment based on only such evidence as he cannot conceal from the authorities, who cannot compel him to testify in court and also cannot question him before? Our system comes close to the latter by any interpretation, for the defendant is shielded by such safeguards as no system of law except the Anglo-American concedes to him."

We must point out, however, that Justice Jackson felt strongly that in regard to persons reasonably *suspected* of crime, "Questioning is an indispensable instrumentality of justice." Ashcraft v. Tennessee, 1944, 322 U.S. 143, 160, 64 S.Ct. 921, 88 L.Ed. 1192. Query as to questioning of persons previously *indicted*.

778

which enables a Government agent to appear at an indicted prisoner's cell without notice, turn the key, and conduct then and there a secret interrogation of the surprised prisoner.

■ One of the aims of the federal courts in exercising their supervisory powers over the administration of federal criminal justice is "to avoid all the evil implications of secret interrogation of persons accused of crime." Mallory v. United States, 1942, 354 U.S. 449, 453, 77 S.Ct. 1356, 1358, 1 L.Ed.2d 1479. This principle has been carried over into military law, although courts-martial are not Article III courts and, generally speaking, a member of the armed services does not have all the constitutional rights of a civilian. The United States Courts of Military Appeals have reversed convictions on the ground that a person suspected of crime is entitled to counsel during an investigatory interrogation even before charges have been filed against him and before his right to military counsel accrues. United States v. Gunnels, 1957, 8 USCMA 130, 23 CMR 354; United States v. Rose, 1957, 8 USCMA 441, 24 CMR 251.

The importance of the right to counsel has been reaffirmed in the proposed amendments to the Federal Rules of Criminal Procedure. Thus, the suggested revision of Rule 44 provides that

"Every defendant who is unable to obtain counsel shall be entitled, if he so requests, to have counsel assigned to represent him within a

reasonable time after such request." 1963 U.S. Code Cong. & Ad. News, 88th Cong. 1 Sess. p. 132.

Similarly, Rule 5 is to be amended to stipulate that "[t]he commissioner shall inform the defendant of the complaint against him, of his right to retain counsel, *of his right to request the assignment of counsel,* and of his right to have a preliminary examination." 1963 U.S. Code Cong. & Ad. News, 88th Cong. 1 Sess. p. 114.

■ No one can dispute the truth of Professor Chafee's statement, "A person accused of crime needs a lawyer right after his arrest probably more than at any other time." [4] It would not be unreasonable therefore to recognize an accused's right to counsel from the moment of arrest.[5] But certainly if an accused "requires the guiding hand of counsel at every step of the proceedings against him", as the Supreme Court declared over thirty years ago in Powell v. Alabama, the proceedings commence no later than when a defendant is indicted. We read Spano as the New York Court of Appeals reads Spano: the Constitution gives a defendant the absolute right to counsel, starting no later than after indictment. The use of oral admissions obtained during a secret police interrogation of an indicted prisoner without counsel is so incompatible with a fair trial as to constitute a violation of the due process clause. A fortiori, we hold that testimony relating to the oral statements obtained during the interrogation

4. Chafee, 2 Documents on Fundamental Human Rights, 541 (1951–1952) Cf. "The time a defendant needs counsel most is immediately after his arrest and until trial. * * * Indeed, counsel was not appointed for them until after they had been arraigned and had entered their pleas of not guilty. By that time the evidence was all neatly tied up for delivery at the trial. * * * One can imagine a cynical prosecutor saying: 'Let them have the most illustrious counsel, now. They can't escape the noose. There is nothing that counsel can do for them at the trial'". Ex parte Sullivan, D.Ct. Utah, 1952, 107 F.Supp. 514, 517–518.

5. There is an excellent treatment of the subject in a Note, Right to Counsel During Police Interrogation, 16 Rutgers L. Rev. 573 (1962). See also Rothblatt & Rothblatt, The Right to Counsel and to Prompt Assignment, 27 Brooklyn L.Rev. 24 (1960); Allison, He Needs a Lawyer Now, 42 J.Am.Jud.Soc. 113 (1958); Note, 107 U.Pa.L.Rev. 286 (1958); Comment, Prearraignment Interrogation and the McNabb-Mallory Miasma: A Proposed Amendment to the Federal Rules of Criminal Procedure, 68 Yale L.J. 1003, 1031–1033 (1959); Note, Right to Appointment at the Preliminary Examination, 3 Utah L.Rev. 224 (1960).

are inadmissible under the McNabb-Mallory doctrine.

The judgment is reversed and remanded.

HUTCHESON, Circuit Judge (dissenting).

I find myself in complete disagreement with the conclusion of the majority that the judgment of conviction should be reversed and particularly with the ground on which the reversal is rested.

Except that the conspiracy was to prey on Negro addicts in Fort Worth, the case below was just an ordinary conspiracy for dealing in heroin on a large scale. The conspiracy and appellant's guilt are established by overwhelming and convincing evidence, and no reversible error attending the trial was claimed below.

I, therefore, most vigorously dissent from the action of the court in voiding the trial, conviction and judgment, and sending the case back for another trial on a theory of reversible error, not claimed below but put forward for the first time by the majority, with which I flatly disagree, a theory not supported by statute, rule or authoritative court decision, and never until now advanced by this court or any member of it. This theory, as the majority states it, is that, though no objection was made to its offer in evidence on the ground of its involuntariness, or indeed on any named ground, the trial judge erred in "not excluding the testimony of a special government investigator relating to alleged admissions of the defendant during an ex parte police interrogation". The majority then went on to say:

"For purposes of this opinion, the salient facts are few and undisputed. Two special Government agents secretly interrogated Lee in his prison cell. They appeared at the cell door without prior notice. Lee had previously been indicted. He had no counsel before or during the questioning. The agents did not record Lee's statement or reduce them to writing. At the trial, over the objection of the defendant's counsel, one of the agents testified in narrative form to Lee's oral 'admissions'.

\* \* \* \* \* \*

"The basic difficulty this case presents arises from the conflict between society's interest in police interrogation of suspected criminals and the protection of an individual's constitutional rights during such an interrogation. There is general agreement among criminologists that interrogation of criminal offenders is a necessary ingredient of police activities."

With deference, while this view no doubt represents the personal views of the majority judges and of certain non-neutral [1] theorists who in the field of criminal law are endeavoring to remove its ancient landmarks and to change the settled principles governing trial and error in a criminal case by introducing in their stead new and strange doctrines under which a convicted defendant is regarded *as a personal ward of the appellate courts and instead of being compelled, as statute and rules provide, to show for reversal that his trial was attended with prejudicial error,* he is required only to invoke and enlist in his behalf the supposed supervisory powers and personal interest of the Court of Appeals, or enough of its judges to carry the day for him. In short, criminal justice is to be no longer a two-way street where a defendant, on appeal from a conviction, is not presumed to be innocent and entitled to a reversal, and decisions on appeal must go for the government or for appellants, not on feelings of the judges, but according to established legal principles. Among such principles, it has always been the law that to support a reversal for prejudicial error on the part of the trial judge, such error must be shown, and where the question is whether a statement, confession, or admission

1. Cf. "The Supreme Court Cannot Be Neutral". Benj. F. Wright, Tex.Law Review, Vol. 40 No. 5.

of a defendant is receivable into evidence depends, and depends alone, *upon whether it was or was not a voluntary one within the meaning of the settled law.*[2] Here the defendant, represented by counsel of his own choosing, did not object to the statements as involuntary or coerced, and no request for instructions to the jury was made on this point. Indeed, *the defendant did not object to its admission on this ground*, but the district judge fully, properly and carefully charged the jury on the question of involuntariness.

The record clearly shows this, and the majority does not put its decision on involuntariness. Instead it puts forward a new theory without foundation in Federal decision. Indeed, as the majority opinion shows, the Eighth Circuit, in Fequer v. United States, 320 F.2d 214 and the Second Circuit, in United States v. Massiah, 307 F.2d 62, have refused to so hold. Compare this court's opinion in Dailey v. United States, note 2, supra. The Spano case, cited by the majority, does not so hold. That case, as it is reported, consists merely of several separate opinions presenting differing personal views of individual judges, some saying this and some saying that, while the court as a whole flatly declined to so hold, as is claimed by the majority here. Indeed, it was expressly declared in the only opinion the court rendered in the Spano case that the separate opinions dealt only with the particular facts in that case and that there was no attempt to lay down the general rule for which the majority here plugs. This court has never, until now and here, in any considered opinion so gone off after this or other such false gods or otherwise bowed the knee to Baal, and I do not believe that as a court it ever will. At any rate, I emphatically condemn and reject the majority's view as simply personal decreeing and, as such, alien to this circuit and to the law generally and as completely unauthorized.

Declining, therefore, to follow where they like sheep, have gone astray, I respectfully condemn and reject the views of the majority as mere personal decreeing, and, as vigorously as I can, I dissent therefrom.

---

2. Dailey v. United States, 261 F.2d 870 at 872 and cases cited.