Burl Eugene LYLES, Appellant,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.

No. 20658.

United States Court of Appeals Fifth Circuit.

March 12, 1964.

Rehearing Denied April 24, 1964.

See also D.C., 32 F.R.D. 248.

Robert Coffey, Houston, Tex., for appellant.

Sam R. Wilson, Houston, Tex., J. G. Davis, Asst. Atty. Gen., Huntsville, Tex., George W. Gray, III, Asst. Atty. Gen., Austin, Tex., for appellee.

Before HUTCHESON, BREITEN-STEIN,* and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Lyles, the appellant here, as a result of information received from an accomplice, was indicted by the grand jury of Ector County, Texas in February of 1961 for the crime of burglary. A warrant was then issued for his arrest. Upon waiving extradition, he was returned to Ector County from California and placed in the Odessa City jail at 12:05 A.M. He spent the remainder of the night sleeping. Around noon on that day he was asked by a detective lieutenant if he wished to make a statement concerning the charges pending against him. He replied that he did. The lieutenant then removed him from the jail and took him to his office where he was given the warning required by Texas law that he need not make a statement, but if made it might be used against him on any trial of the charges in question.[1] Lyles recites in his statement that he was told that he did not have to make a statement at all and that any statement made "may" be used in evidence on the trial. The lieutenant testified that this warning was in fact given.

Appellant gave an oral recitation of his participation in the crime with which he was charged. He asked only, as did his accomplice who had previously given written statements to other detectives, that he not be required to name his accomplice in writing. The lieutenant then took his statement down by longhand, and he again repeated the story of his participation. The statement was thereafter typed by a secretary, and signed in the presence of witnesses, although only appellant and the lieutenant were present when the statement was made. The entire interview including the time consumed in typing and signing the statement took about two hours. A lady called to see appellant while he was making his statement, and was advised that she could see him in a few minutes if she would wait. The inference from the record is that this was appellant's sister. She did see him afterwards but the record is not clear as to the hour.

---

* Of the Tenth Circuit, sitting by designation.

1. Vernon's Annotated Code of Criminal Procedure, Art. 727:

"The confession shall not be used if, at the time it was made, the defendant was in jail or other place of confinement, nor while he is in the custody of an officer, unless made in the voluntary statement of accused, taken before an examining court in accordance with law, or be made in writing and signed by him; which written statement shall show that he has been warned by the person to whom the same is made."

He did not have counsel at the time. He did not request counsel, and counsel was not offered him until later when an experienced criminal lawyer was appointed to defend him on the day before his case came to trial. The state proved the *corpus delicti*, introduced the written statement of confession, and appellant was thereupon convicted by a jury. The same lawyer filed a motion for a new trial which was overruled, and then unsuccessfully appealed to the Court of Criminal Appeals of Texas, making a personal appearance to argue the case before that court. Lyles v. State of Texas, 1961, Tex.Cr.App., 351 S.W.2d 886. A subsequent petition for a writ of habeas corpus to that court was denied.

This appeal comes from the denial of a petition for a writ of habeas corpus by the United States District Court for the Southern District of Texas. That court held a full hearing on the petition with appellant, represented by counsel appointed by that court, present and testifying. The court heard the testimony of other witnesses, considered documentary and stipulated evidence, and the record in the state court.

It was the position of appellant there that the statement was obtained through coercion, and that his trial counsel was negligent in failing to object to the admission of the statement in evidence, in failing to put his sister on the stand as an alibi witness, and in failing to put an alleged accomplice, who later plead guilty, on the stand to testify that he did not participate in the crime. The District Court resolved each of these contentions against appellant on the facts.

It appears from the record that no objection was made on the trial to the statement other than on the basis that the testimony of the detective lieutenant showed that the warning required under

the Texas statute, Footnote 1, supra, was not given in proper form.[2] However, the contention on the habeas corpus hearing in the District Court was that the detective lieutenant composed the statement, based upon his own knowledge of the crime, and forced appellant to sign it. It is to be noted that the statement went into minute detail as to the commission of the crime and differed in material degree from statements theretofore taken from the accomplice. The lieutenant testified that there was no coercion whatever, but that the statement was voluntarily made. The testimony of appellant was that he was slapped anywhere from two to several times by the lieutenant, and that this caused him to sign the statement. He did not testify that any such conduct on the part of the lieutenant caused him to give the statement. The court chose to believe the lieutenant after hearing from both, and after both had undergone searching cross-examination.

The accomplice was brought to the hearing from the Texas State Penitentiary where he was lodged with appellant. He testified that appellant did not participate in the crime and that he had so told the lieutenant before trial. His story was patently unworthy of belief in view of his prior statements, and from the standpoint of the physical impossibility of him having alone committed the burglary, it having been carried out in such a way as to require the services of at least two people. He had previously obtained leniency in the form of a concurrent state sentence for his help in convicting appellant.[3]

It developed that the sister who was asserted to be an alibi witness sat in the courtroom during the trial in the state court but did not testify. Although notified by letter, and called on the telephone by counsel for appellant in the District Court, she failed to appear.

2. It was the position of his attorney there and on the state court appeal that the statutory warning was inadequate in that it was given in terms that the statement "would" be used against Lyles instead of that it "may" be used. The Texas Court of Criminal Appeals, 351 S.W.2d 886, 888, supra, held that this objection was waived by the statement having been admitted into evidence earlier without objection.

3. The District Court very properly directed an investigation into the perjury aspects of this hearing.

On the appeal here we appointed new and different counsel to represent appellant, and proceeding diligently in the performance of his duty, the thrust of the case has been somewhat modified or refined. First, it is claimed that counsel was in fact ineffective because of late appointment or otherwise. Second, he relies on Lee v. United States, 5 Cir., 1963, 322 F.2d 770, a case decided by this court since the District Court decision in the case at bar, as supporting the proposition that his client was entitled to counsel after indictment as a matter of law, including the time when the statement in question was made, with the result that the statement was inadmissible.

■■ The right of an indigent state prisoner to counsel in a case of this kind is undoubted. It rests on the Sixth Amendment and its inclusion in the due process clause of the Fourteenth Amendment. Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. And the right to counsel includes the right to have the assistance of counsel in preparing for the trial, or, stated differently, the effective assistance of counsel. Powell v. Alabama, 1932, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158.

Appellant had trial counsel, and his claim that he was deprived of the effective assistance of counsel is without merit. It appears without dispute that the lawyer appointed to represent him was experienced in criminal trials, that appellant had previously told his sister to get in touch with the same lawyer with regard to obtaining his services in the same case, that the lawyer successfully defended a person charged with another burglary on the day before this trial, and that appellant asked to go to trial on the next day in the hope of obtaining the advantage of what he thought might be a favorable panel of jurors. This is the same lawyer who handled the appeal of the case through the Texas Court of Criminal Appeals. He orally argued the appeal there and was commended by that court for his diligence. Contrasted with this state of the record is the fact that there is no showing whatever of prejudice to appellant on account of having gone to trial when he did, or because of the late appointment of counsel.

■ The claim of negligence on the part of the lawyer rested on the statement of appellant that the lawyer was told of the police brutality and coercion and of the alibi witness, but failed to object to the admission of the statement in evidence or to use the witness. The predicate for this claim fell in the District Court for lack of proof of the alleged brutality and coercion, or that there was an alibi witness. In our view this holding was well founded.

■ This leaves for decision the question of the right to counsel at the time the confession was made. Powell v. Alabama, supra, indicates that the right to counsel encompasses the guiding hand of counsel at every step of the proceedings against a defendant, and appellant urges that this means every step after indictment, and that his giving of the written statement was a step. He assumes a state of indigency at the time the statement was made. Indigency is a fact question, and there was no determination of it in the District Court although an inference of indigency might fairly be drawn from the fact that counsel was later appointed for him. At any rate, we will proceed on that basis. Moreover, there is no contention that appellant waived his right to counsel. See Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; and Carnley v. Cochran, 1962, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. Thus our determination is within the frame of a voluntary statement by an indigent defendant after indictment.

A panel of this court in the Lee case, supra, with Judge Hutcheson dissenting, held that oral admissions voluntarily made by a prisoner to two government agents upon secret interrogation in his prison cell, without prior notice, and after indictment, were inadmissible in the light of what the court deemed the

present view of the Supreme Court to be based on the concurring opinions in Spano v. New York, 1959, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265, and the dissenting opinions in Crooker v. California, 1958, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448, and Cicenia v. LaGay, 1958, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed. 2d 1523. This stated postulate was buttressed by applying the reasoning of the New York Court of Appeals in state cases decided subsequent to Spano. See People of the State of New York v. Di Biasi, 1960, 7 N.Y.2d 544, 200 N.Y.S.2d 21, 166 N.E.2d 825 (voluntary oral admissions made after indictment, and after the defendant had been surrendered by his attorney for arraignment and trial, held inadmissible); People of the State of New York v. Waterman, 1961, 9 N.Y.2d 561, 216 N.Y.S.2d 70, 175 N.E. 2d 445 (oral statements made as the result of secret interrogation after indictment excluded where defendant was not first advised of his privilege against self incrimination and of his right to the assistance of counsel); and People of the State of New York v. Meyer, 1962, 11 N.Y.2d 162, 227 N.Y.S.2d 427, 182 N.E.2d 103 (rule expanded to exclude voluntary, unsolicited oral statements made by an accused to a police officer for his own benefit after arraignment and before indictment, and after having been informed of his right to counsel, and not having requested counsel).

These New York decisions, including the strong dissenting opinion in Spano in that court, 4 N.Y.2d 256, 173 N.Y.S.2d 793, 150 N.E.2d 226, and especially Di Biasi, and Waterman manifestly indicate that the New York Court of Appeals was not relying on the Spano decision in the Supreme Court for the new rule of an absolute right to counsel after indictment, but on the New York law according a defendant the right to counsel at every stage of a criminal cause. This court in Lee, however, stated that it read "Spano as the New York Court of Appeals reads Spano: the Constitution gives a defendant the absolute right to counsel, starting no later than after indictment," with it following that the use of oral admissions obtained during a secret police interrogation of the indicted prisoner without counsel constituted a violation of the due process clause of the Fourteenth Amendment. This reasoning was then adopted as the federal rule under the supervisory authority principle of the federal courts over the administration of federal criminal justice. See McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; and Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

Thus, this court in Lee, under its facts and in a federal case, adopted the very reasoning to reach its decision that appellant now claims as the constitutional standard to be applied in state cases. The question we must decide is whether to adopt that reasoning as the standard, and if so, whether it must be applied to this case under its facts. The adoption of the standard in Lee gave rise to an absolute right, the deprivation of which constituted, per se, a prejudicial, reversible error when coupled with the testimony as to the admissions. We do not adopt such a standard in this case, and do not reach the distinguishing factual features of the cases if indeed the factual differences would matter if the right is absolute.[4]

We too base our holding on the decisions of the Supreme Court in Crooker v.

4. In Lee the court strongly emphasized that the admissions were oral. They were made after interrogation in prison by two officers without prior notice to the prisoner. There was no warning given that he need not make a statement, or that it might be used against him. Here the statement was given in an office at the police station after appellant had stated that he wished to make a statement. It was given to one officer, in writing, and signed in the presence of witnesses, all after being told that he need not make a statement and that it might be used against him.

California, supra; Cicenia v. LaGay, supra; and Spano v. New York, supra, and conclude that appellant was not denied due process of law. We have in mind in reaching this conclusion those principles set forth in McNabb, supra, that the supervisory power of appellate courts over federal trials extends to requiring "civilized standards of procedure and evidence" and that these are more than "fundamental principles of liberty and justice" or "minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' ", which states are required to adhere to in their prosecutions. It was there pointed out also that the review of state court action by a federal court demands appropriate respect for the deliberative judgment of a state in the exercise of its jurisdiction under the accommodation necessary in the federal system. And Mr. Justice Harlan speaking for the court in Cicenia v. LaGay, supra, said:

" * * * petitioner would have us hold that any state denial of a defendant's request to confer with counsel during police questioning violates due process, irrespective of the particular circumstances involved. Such a holding, in its ultimate reach, would mean that state police could not interrogate a suspect before giving him an opportunity to secure counsel. Even in federal prosecutions this Court has refrained from laying down any such inflexible rule. See McNabb v. United States [318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819], supra; Mallory v. United States, 354 U.S. 449, 77 S. Ct. 1356, 1 L.Ed.2d 1479. Still less should we impose this standard on each of the 48 States as a matter of constitutional compulsion. It is well known that law-enforcement problems vary widely from State to State, as well as among different communities within the same State. This Court has often recognized that it is of the 'very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice.' * * * The broad rule sought here and in Crooker would require us to apply the Fourteenth Amendment in a manner which would be foreign both to the spirit in which it was conceived and the way in which it has been implemented by this Court."

In Crooker v. California, the defendant was arrested on a charge of murder. His request that he be allowed to obtain counsel was denied by the police with the advice that he could call an attorney after the investigation was completed. He confessed after having been interrogated over a period of several hours. The Supreme Court concluded that the statement of confession was voluntary, and held that its use did not violate the due process clause although obtained after denial of the request for counsel. The statement was obtained prior to indictment.

In Cicenia v. LaGay, the defendant was also charged with murder. He obtained counsel who turned him over to the police. Interrogation of the defendant was then commenced by the police, and the request of the lawyer to see the defendant and of the defendant to see his lawyer were denied. He confessed after seven hours. The Supreme Court, noting that Cicenia had counsel as distinguished from Crooker who wanted counsel, held that the confession was not obtained through coercion and that there was no denial of due process because of the refusal to let him consult with counsel. The court also noted that the problem involved the right to counsel on the one hand and the responsibility of the police to solve crime on the other, and that the reconciling of these competing concerns in judging whether state prosecutions meet the requirements of due process, as had been pointed out in Crooker, involved a consideration of the lack of counsel as one pertinent element in determining from all of the circum-

stances whether a conviction was attended by fundamental unfairness. The confession from Cicenia was also obtained prior to indictment.

In the Spano case, the Supreme Court in an unanimous opinion reversed a conviction based on a confession extracted after indictment for first degree murder, and after interrogation by teams of prosecutors and police lasting through most of the night. The defendant had counsel who had turned him over to the police. He resisted the interrogation for several hours by refusing to give any information other than stating that the interrogators should see his lawyer. He asked for his lawyer but was denied the right to see him. The court pointed out that Spano's first contention was that his absolute right to counsel, Powell v. Alabama, supra, became operative on the return of the indictment against him, for at that time he was in every sense a defendant in a criminal case. Accordingly, he argued, no confession obtained in the absence of counsel could be used without violating the Fourteenth Amendment. He sought to distinguish the Crooker and Cicenia cases on the ground that no indictment had been returned in those cases when the confessions were made. The court found it unnecessary to reach this contention, holding that the confession was illegally obtained by reason of Spano's will having been "overborne by official pressure, fatigue and sympathy falsely aroused after considering all the facts in their post-indictment setting." The Chief Justice, speaking for the court, pointed out that it was necessary to examine all of the facts in the case in view of the delicate nature of the constitutional determination that must be made by the court, referring to the conflict between society's interest in prompt and efficient law enforcement, and its interest in preventing the rights of its individual members from being abridged by unconstitutional methods of law enforcement.

■ The court in Lee believed that a present majority of the Supreme Court, considering all the opinions in Spano, Crooker, and Cicenia, has adopted, seriatim so to speak and not on a holding, the constitutional standard of an absolute right to counsel starting no later than after indictment. With deference, we do not find this in these cases. The question was expressly saved in Spano.

■ Thus we hold that no such standard has been laid down to date for state cases. Until the time that such a right, notwithstanding the voluntariness of the written confession, becomes recognized as fundamental and "of the very essence of a scheme of ordered liberty," cf. Palko v. Connecticut, 1937, 302 U.S. 319, 58 S. Ct. 149, 82 L.Ed. 288, so as to be absolute by virtue of arising under the Sixth Amendment and incorporated in the Fourteenth Amendment, it is our view that a prisoner's rights may be amply protected by the continued application of the test in cases of this kind or subjecting confessions to close scrutiny where the intent of officers to extract a confession or admission appears. Malinski v. New York, 1945, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029. And to this must be added the test referred to in Crooker, and in Cicenia: that failure to provide an indigent prisoner with counsel violates due process if upon a consideration of all of the circumstances of the case it appears that he is so prejudiced thereby as to infect his subsequent trial with an absence of that fundamental fairness essential to the very concept of justice. In that event, because he had no counsel, the admission or testimony with reference thereto would be inadmissible.

There is no showing of prejudice here when so tested, and it follows that the judgment should be, and it is affirmed.