Antonio Parra PINEDA, Appellant,

v.

R. E. BAILEY, Sheriff of El Paso County, Texas, and Dr. George Beto, Director of the Texas Department of Corrections, Appellees.

No. 21506.

United States Court of Appeals
Fifth Circuit.

Jan. 12, 1965.

Joseph A. Calamia, Edward S. Marquez, El Paso, Tex., for appellant.

Edwin F. Berliner, Dist. Atty., El Paso County, Tex., Allo B. Crow, Jr., Asst. Atty. Gen., of Texas, Austin, Tex., for appellees.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

HUTCHESON, Circuit Judge:

■ Appellant, found guilty of murder with malice in a Texas court, was sentenced to a maximum of 43 years in the state penitentiary. His conviction and sentence were affirmed by the Texas Court of Criminal Appeals. Pineda v. State, 367 S.W.2d 862 (Tex.Cr.App. 1963). Shortly after that affirmance Appellant complained that his constitutional right to assistance of counsel had been violated. He asserted this claim in a petition for writ of habeas corpus in a Texas District Court which denied him the relief. The Texas Court of Criminal Appeals affirmed the lower court's denial. Ex parte Pineda, 373 S.W.2d 689 (Tex. Cr.App.1963). Appellant then petitioned the United States District Court for the Western District of Texas for a writ of habeas corpus.[1] The application was

---

1. Appellees contend that Appellant did not exhaust his state remedies before ap-

plying to the United States District Court in that he did not file a petition

granted, the writ issued, and a hearing was had after which the Court denied the relief Appellant sought. The case is here on appeal in forma pauperis from that denial.

Appellant contends that the District Court erred in holding that he was not denied his right to assistance of counsel under the 6th Amendment and the due process and equal protection clauses of the 14th Amendment to the United States Constitution. This claim is based upon the manner by which the attorney who represented him at his trial was selected, the extensive adverse publicity to which that attorney was then subject, his performance in representing Appellant, and his inaction in regard to Appellant's appeal from his original conviction. Appellant is now represented by different counsel appointed after the Texas Court of Criminal Appeals had affirmed his conviction.

Subsequent to Appellant's indictment, Woodrow Wilson Bean contacted the District Attorney's office in El Paso and told them that he would be available to represent indigent defendants. That office informed him that there were a couple of men who presently needed defense counsel and suggested that he contact the Court concerning his possible appointment in such a case. Mr. Bean then contacted the Court and represented to the judge that he was representing Appellant. As the trial judge stated, "The Court will certify that he was told by Mr. Bean that he was representing the defendant". Mr. Bean then contacted Appellant in the County Jail and told him that he had been appointed by the Court to represent him. Appellant apparently believed he had been appointed because, as he said, he had no reason to believe otherwise. Although it appears that the trial court learned of these circumstances prior to trial, Mr. Bean was permitted to continue representing Appellant. The prosecutor testified that it was his under-

standing that Mr. Bean had been court appointed, and he did not learn otherwise until during the trial.

At the time he began representing Appellant, and continuing through the trial, Mr. Bean was the object of a great deal of adverse publicity concerning his failure to file federal income tax returns. On June 18, 1962, he was convicted of five violations of the Internal Revenue Code by the United States District Court for the Western District of Texas. On September 26, 1962 (13 days prior to Appellant's trial) the Grievance Committee of the State Bar of Texas filed a petition against Mr. Bean in state court seeking his disbarment, suspension or reprimand. On July 16, 1963, subsequent to Appellant's trial, Mr. Bean consented to a judgment of suspension of his license to practice law for two years.

According to Appellant's uncontradicted testimony he talked with Mr. Bean on only two occasions prior to his trial— once for approximately five minutes about a month before his trial when Mr. Bean informed him that he had been appointed to defend him, and three or four days before his trial when Mr. Bean visited him in his cell for less than five minutes.

Appellant contends that Mr. Bean's handling of his defense failed to protect his rights during the trial. He asserts that no affirmative charges were submitted or objections made to the Court's failure to charge on such important issues as self-defense, the law of threats by decedent, intoxication as mitigation of punishment, negligent and gross mistreatment as cause of death, or on the issue of insanity of Appellant, although he contends there was evidence available to support such charges. He also contends some of this evidence was not adequately developed in the trial.

After Appellant's conviction Mr. Bean filed a skeleton motion for new trial which was overruled by operation of law without hearing. Mr. Bean filed a notice of

for writ of certiorari in the United States Supreme Court to review the action of the Texas Court of Criminal Appeals.

That contention is clearly without merit. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

appeal and a pauper's affidavit for Appellant, but apparently did nothing further to prosecute Appellant's case. He presented no brief, bills of exception, or argument to the Court of Criminal Appeals. As Mr. Bean was leaving town he handed the statement of facts and transcript to an attorney whose office was across the hall from his own and asked him to see that they got to the Court of Criminal Appeals within the statutory limits. That attorney forwarded them to the Court as an accommodation to Mr. Bean. It considered Appellant's case on the record and statement of facts with no assistance from briefs or argument.

 It has been definitely held that the 6th Amendment to the United States Constitution, as applied to the states through the 14th Amendment, secures the right of an indigent state prisoner to the assistance of counsel in a case of this kind.[2] As this Court has recently written, more than a formal appointment of counsel is required. There must be effective assistance of counsel.[3] Effective assistance does not mean that a defendant is entitled to have the best counsel appointed, or any particular counsel, but it does mean that he must have such assistance as will assure him due process of law. As we said in MacKenna v. Ellis, 280 F.2d 592, 599 (5th Cir. 1960), "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance".

 A review of the record in this case convinces us that it cannot be said that Appellant's counsel met that standard. The record fails to show that Mr. Bean brought to the defense of Appellant the zeal which the law requires for his defense. His conduct is more consistent with an attempt to go through the formalities of a trial than it is with an interested counsel's best efforts to develop and present his client's case. He spent approximately ten minutes with Appellant prior to his trial to prepare his defense for a charge of murder with malice. His conduct prior to, during, and after trial hardly shows effective assistance of counsel.

The haphazard way in which Mr. Bean came to represent Appellant seems to reflect a lack of the care necessary to provide him with an advocate to conduct his defense. We do not believe the record supports the proposition that Mr. Bean was "accepted" as defense counsel by the District Attorney's office or that there is any sign that that office acted improperly in its relations with him. However, it is clear that he was never actually appointed to defend Appellant, but was merely "permitted" to do so after he entered the case initially through misrepresentations both to Appellant and the trial judge. He represented to the Court that he was Appellant's choice and to the Appellant that he was the Court's choice, when in reality, he seems to have been no one's choice initially. Certainly this method of "appointment" is hardly designed to protect the right of indigent defendants to effective assistance of counsel.

We need look no further than Powell v. State of Alabama, supra, to describe the situation in this case:

"It is not enough to assume that counsel thus precipitated into the case thought there was no defense, and exercised their best judgment in proceeding to trial without preparation. Neither they nor the court could say what a prompt and thorough-going investigation might disclose as to the facts. No attempt was made to investigate. * * * The record indicates that the appearance was rather pro forma than zealous

---

2. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Lyles v. Beto, 329 F.2d 332 (5th Cir. 1964).

3. Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Lyles v. Beto, 329 F.2d 332 (5th Cir. 1964); Porter v. United States, 298 F.2d 461 (5th Cir. 1962).

and active * * *. Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense. To decide othewise, would simply be to ignore actualities. * * * " 4

The judgment is accordingly reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.