**People of the State of Illinois, Appellee, v. Leo Lagardo, Appellant.**

Gen. No. 49,860.

First District, Second Division.

April 11, 1967.

Rehearing denied May 3, 1967.

131

Dennis J. Horan, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Morton Friedman, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

Defendant, Leo Lagardo, appeals from a conviction for the offense of armed robbery, after a jury trial, for which he was sentenced to a term of ten to twenty years in the State Penitentiary, on which judgment was entered on February 3, 1963.

On January 11, 1963, defendant was indicted with three coindictees, Isaac James Oshana, Frank Amato and Edward Pung, for having:

> ". . . committed the offense of robbery, in that they, by the use of force, and while armed with a dangerous weapon, took a clock, watch, television set, camera, radio, typewriter, and two coats from the person and presence of (the complainant), . . ." (Insert supplied.)

On November 2, 1962, defendant and three of his coindictees, met in a restaurant, where they allegedly planned the robbery of one David L. Pruitt. Thereafter on November 3, 1962, coindictees Oshana and Amato and defendant proceeded to Pruitt's apartment in the early morning hours and allegedly with Amato holding the gun, (.22 Derringer) on Pruitt, Oshana, who was also holding a gun, (.38 caliber) tied up Pruitt and one Stanko, who was in the apartment with him. They took articles, which were later identified as the property of complainant and are the items set out in the indictment above. During the course of the robbery, defendant allegedly remained downstairs in the car. Oshana took the goods downstairs, while Amato watched the complainant and Stanko. Defendant

132

helped load the goods into the car. Thereafter, testimony was adduced that Amato left his .22 Derringer in the automobile of Lagardo.

Defendant was arraigned January 18, 1963, and re-arraigned on October 8, 1963, after having changed attorneys. At the second arraignment, the People were ordered by the court to furnish the defense with copies of written statements taken from defendant together with a list of witnesses within ten days thereafter. Counsel for defendant moved for leave to withdraw as counsel for defendant, which motion was denied.

On October 19, 1963, after defendant's indictment and arraignment, and unknown to the prosecutors in this case, three police officers, investigating another and unrelated robbery, went to the County Jail, where defendant was incarcerated, to question him. One of these officers testified that they did not know at this time for what offense defendant was being held. The officers knew that defendant was represented by counsel, but did not inform counsel, nor seek his permission to question defendant. The questioning lasted about forty-five minutes to an hour. Asked during the course of the interrogation for what charge he was being held, defendant responded that he was being detained on an armed robbery charge. Officer Mason, testified that defendant thereafter volunteered the statement, "he was not worried about the armed robbery because the two fellows that were upstairs caught the finger and he was downstairs waiting for them." No further questions relating to this offense were directed to defendant.

The officers did not then appreciate the significance of the statement, nor was the prosecutor aware of what had transpired. Consequently, defendant's alleged admission was not brought to the prosecutors' attention until January 15, 1964, five days before the trial was to commence. The prosecutors did not inform the defense of the existence of such admission prior to the commencement of

the trial, notwithstanding the previous order requiring the People to produce copies of written statements taken from defendant and to furnish a list of witnesses thereto. The testimony of a coindictee at the trial placed the defendant at the scene of the robbery downstairs waiting in a car. The subsequent introduction of the admission into evidence was the subject of a motion to suppress a confession by defendant, which was denied. Claiming surprise, defendant's counsel requested and received a hearing on the voluntariness of the admission. The voluntariness of the admission is not in dispute on this appeal.

Testimony further revealed that on November 8, 1962, Officer Julien, as a result of a conversation had between himself and one of the coindictees, sought to gain entrance into the defendant's apartment. Announcing his presence, the officer was admitted into the apartment by defendant's wife. Defendant was then placed under arrest and a .22 Derringer gun, observed by the arresting officer on the top of a dresser, was seized.

After the trial had commenced, defendant's counsel made a motion to suppress the weapon on the ground that it had been illegally seized by the arresting officer. The court denied the motion for want of timeliness. Defendant's counsel contended he had been taken by surprise in that he did not know, nor did the indictment indicate, the use of a weapon other than the one already introduced into evidence, and hence his failure to object by pretrial motion. He then requested leave to file a written motion and affidavits in support thereof, which was also denied. The court stating that if counsel were surprised, it was only because his client had withheld information from him and such was not cause to delay the trial.

It is defendant's theory of the case: (1) that police interrogation of an indicted and arraigned defendant, without consent of his counsel, deprives that defendant of his rights under the Sixth Amendment of the United States Constitution, (2) that a motion to suppress evi-

dence is timely even when made after the trial has commenced, and (3) that the defendant was convicted of a charge for which he was not indicted.

It is the Peoples' theory of the case: (1) that statements not deliberately elicited by the police from an indicted and arraigned defendant are not within the protection afforded a defendant under the decision of Massiah v. United States, 377 US 201 (1964), (cited by defendant), (2) that the motion to suppress was untimely and properly denied in that defendant's counsel was not taken by surprise, and (3) that the indictment apprised defendant of the nature of the charges brought against him.

Defendant first contends that police interrogation of an indicted and arraigned defendant, without the presence or consent of his known counsel, deprives him of his constitutional rights to assistance of counsel and due process of law; that this alleged prejudice was compounded by the prosecutors' failure to inform the defense of the existence of the admission prior to trial, in specific violation of the court order entered at the arraignment.

■■ The decisions of Gideon v. Wainwright, 372 US 335 (1963), Escobedo v. Illinois, 378 US 478 (decided 6/22/64), and Miranda v. Arizona, 384 US 436 (decided 6/13/66) have firmly established, as well as extended, the application of the constitutional guarantee of right to assistance of counsel in State proceedings, to preindictment interrogation. Contrary, however, to the argument of defendant's counsel, neither the Escobedo nor Miranda decisions have retroactive application to State proceedings in which the trial had not been commenced prior to the dates on which these two respective opinions were filed. Johnson v. New Jersey, 384 US 719 (decided 6/20/66). The defendant's trial here began on January 20, 1964, and hence the inapplicability of the Escobedo and Miranda doctrines. It is from within this perspective that defendant's constitutional objection must be evaluated.

Defendant's contention is founded principally upon a line of decisions which have rendered the fruits of post-indictment interrogation of a defendant inadmissible in the subsequent trial against that defendant. Defendant, in this conjunction, relies upon Spano v. New York, 360 US 315 (1959), People v. Waterman, 9 NY2d 561, 175 NE2d 445 (1961), Massiah v. United States, 377 US 201 (1964), McLeod v. Ohio, 381 US 356 (1965), and People v. Halstrom, 34 Ill2d 20, 213 NE2d 498 (1966). Upon an examination of these authorities, we can find no overriding rule which would compel this court to find that defendant's sixth and fourteenth amendment rights have been violated.

In Spano, an indicted defendant confessed to the charge for which he was under indictment, only after he had been subjected to continuous questioning for eight hours by law enforcement authorities and had unsuccessfully requested of them an opportunity to consult his counsel. Moreover, the court there, in footnote 6 at page 323, pointed out that the Spano decision was not intended to reverse their prior decision of Lisenba v. California, 314 US 219 (1941), wherein a defendant, arraigned on the charge of incest, later in response to questioning, confessed to a murder. The subsequent case of People v. Waterman, 9 NY2d 561, 175 NE2d 445 (1961), relying on the Spano decision, is equally not in point, for there the post-indictment interrogation was designed to deliberately elicit a confession to the charge for which defendant was then under indictment.

Nor can this court lend such broad application to the rule promulgated in Massiah v. United States, 377 US 201 (decided 5/18/64) as defendant suggests. The facts there involved an appeal of a federal narcotics conviction. After return of an indictment, and while defendant was free on bond, federal agents secured incriminating statements from defendant as to the charge under indictment, by means of a radio transmitter concealed in the automobile

136

of a trusted confederate of defendant's, who was then acting in alliance with the federal agents. The Supreme Court said at page 206:

> "We hold that the petitioner was denied the basic protections of that guarantee when there was used against him at his trial evidence of his own incriminating words, which federal agents had *deliberately elicited* from him after he had been indicted and in the absence of his counsel." (Emphasis supplied.)

Moreover, the court, at page 207, goes further in pointing out that they do not question the propriety of post-indictment investigation in general, but rather only, ". . . under the circumstances here disclosed, . . . ."

In State v. McLeod, 1 Ohio St2d 60, 203 NE2d 349 (1964), the Ohio Supreme Court considered a murder conviction which had been vacated by the United States Supreme Court and remanded to the Ohio court for consideration in light of the Massiah decision. The facts of the case involved an indicted, but unarraigned, defendant who had yet to procure or be assigned counsel. While riding with State authorities in an automobile in search of the gun alleged to have been used in the holdup, defendant made a voluntary confession to the charge for which he was then under indictment. The Ohio court affirmed the conviction. The United States Supreme Court, however, on petition for writ of certiorari, reversed rendering the succinct opinion:

> "The judgment is reversed. Massiah v. United States, 377 US 201."

The defendant suggests that the McLeod decision created an arena of far greater application of the Massiah doctrine to the States than the Massiah decision would, by itself, indicate. This court is unable to envision quite so far reaching an effect. Certainly the court would

not establish new constitutional principles by way of a memoranda opinion. Irrespective of whether Massiah applies only to statements surreptitiously obtained or to all post-indictment statements deliberately elicited, the simple' fact remains that, unlike McLeod and Massiah, the case at bar concerns itself with a statement not deliberately obtained, which was made in the course of an interrogation totally unrelated to the charge for which defendant was then under indictment. We cannot accept defendant's reasoning that just because he was questioned after he had been indicted, the interrogation necessarily related to the subject matter of that indictment. People v. Stanley, 15 NY2d 30, 203 NE2d 475 (1964).

The case of People v. Halstrom, 34 Ill2d 20, 213 NE2d 498 (1966) does not dictate that a contrary viewpoint be taken as defendant maintains. The court there reversed a burglary conviction based upon its interpretation of the McLeod and Massiah decisions. It is noteworthy that again the facts involved a confession, deliberately elicited, in regard to the charge for which defendant was then under indictment. We do not think it can be said that the Massiah doctrine, as implemented by the McLeod decision, was intended to be operative upon the States, beyond this aforementioned realm of misconduct.

█ In the instant case, the circumstances evidence an entirely different course of conduct by the interrogating officers. There is no dispute that the admission was voluntary, spontaneously offered, rather than deliberately elicited. The record reveals that the interrogating officers did not know for what charge defendant was being held. The officers thought so little of the statement at the time that they neither wrote it down, nor reported it to the prosecutors, until approximately three months later. At no time was defendant denied an affirmative request for assistance of counsel. Moreover, the interrogation itself dealt with matters other than that which was recited in

the indictment. The cases of United States v. Gardner, 347 F2d 405 (7th Cir, 1965), United States v. Accardi, 342 F2d 697 (2nd Cir, 1965), and Gascar v. United States, 356 F2d 101 (9th Cir, 1965), though distinguishable on the facts, support this court's reasoning and are dispositive of the issue of post-indictment interrogation before us.

■ The further contention that the People failed, in violation of court order, to furnish the defense with a copy of defendant's admission and a list of witnesses thereto is equally without merit. The order of October 8, 1963, required that such information be furnished the defense within ten days thereafter. The admission itself was not made until October 19, 1963, eleven days after the entry of the court order. Furthermore, the prosecutors did not become cognizant of the existence of such admission until five days before the trial. The defense requested and received a hearing on the voluntariness of the admission. The statement itself did not constitute such a voluntary acknowledgment of guilt so as to constitute a confession and not an admission and thus fall within the purview of Ill Rev Stats (1963) c 38, § 114–10, as defendant contends. Rather, the statement embraced independent facts from which implication in the robbery could only be inferred. People v. Stanton, 16 Ill2d 459, 158 NE2d 47 (1959).

■ Defendant's motion to suppress the weapon seized by Officer Julien during the course of the arrest was properly denied. The weapon was seized pursuant to a search incidental to a lawful arrest. The Supreme Court stated in People v. Magby, 37 Ill2d 197, 226 NE2d 33 :

"It has long been established that it is competent to prove that an accused person, when arrested, possessed a weapon suitable for the commission of the crime charged, even though no claim is made that

he actually used it in committing the particular crime."

Cf. People v. Gambino, 12 Ill2d 29, 145 NE2d 42 (1957). The evidence shows from the circumstances surrounding the seizure of the weapon and a reading of the indictment that defendant's counsel should have been on notice for the existence of a second weapon. Any surprise on counsel's part could have only resulted from his client's withholding of information from him. The motion could have been properly introduced before the trial began, but was not. The motion was not cause to interrupt the trial, once it had begun. People v. Winn, 324 Ill 428, 155 NE 337 (1927), People v. Valecek, 404 Ill 461, 89 NE2d 368 (1950).

The defendant next argues that he was convicted of a charge (armed robbery) for which he was not indicted in that the indictment recited, ". . . committed the offense of robbery, in that they, by the use of force, and while armed with a dangerous weapon, . . . ." It is further maintained that the indictment was so ambiguously worded that defendant was denied his constitutional right to be apprised of the nature and cause of the accusation brought against him.

■ ■ Our Criminal Code defines two separate offenses of robbery and armed robbery and provides a separate punishment for each. A reading of the indictment, however, clearly evidences the existence of all of the requisite elements for the offense of armed robbery. It is the definitional elements of an offense which must be given legal efficacy and not the generic term used to categorize that offense. As stated in People v. Dudin, 3 Ill2d 16, 19, 119 NE2d 742, 744 (1954):

"Every indictment is deemed sufficiently technical and correct which states the offense in the terms and language of the statute creating the offense."

Cf. People v. McLain, 79 Ill App2d 131, 223 NE2d 235. Thus, the defect, if any, is one of form not substance and does not constitute grounds to disturb a conviction.

For the above reasons, the judgment is affirmed.

Judgment affirmed.

BURKE and BRYANT, JJ., concur.