**People of the State of Illinois, Plaintiff-Appellee, v. Leo Lagardo (Impleaded), Defendant-Appellant.**

**Gen. No. 50,023.**

First District, Second Division.
June 20, 1967.
Rehearing denied July 17, 1967.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, and Thomas C. Siesennop, of Chicago (Michael J. Costello, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Patrick Tuite and Morton E. Friedman, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a conviction in a jury trial for the offense of armed robbery. The defendant, Leo Lagardo, was sentenced to a term of not less than 15 nor more than 40 years in the State Penitentiary. After return of the guilty verdict, defendant made motions for a new trial and in arrest of judgment, both of which were denied and from which this appeal is taken.

At approximately 6:00 a. m. on September 22, 1963, the Polish Roman Catholic Union Museum (hereinafter referred to as the Museum) in Chicago was robbed and numerous historical objects taken therefrom (People's Exhibits 1 thru 25 inclusive). Subsequently, on October 30, 1963, a true bill was returned which jointly indicted Bruno Dispenza, John French, Gene Yocca, and defendant. The defendant was tried separately. The trial commenced on April 13, 1964.

Only one eyewitness to the occurrence was called to testify, Leon Krempec, a night watchman at the Museum. He testified that on the morning in question he was about to go off duty when he was seized and held at gunpoint in an outer hall of the Museum. Although he was only able to see one of the intruders, Krempec stated that four persons participated in the robbery. He based this observation upon the fact that the person holding him at bay had told him that there were four men present. Krempec testified that he had heard the voices of two other persons in the Museum.

On October 18, 1963, Krempec identified Bruno Dispenza at a police lineup as the same person he saw in the Museum on the morning of the robbery. Dispenza was placed under arrest. Krempec, however, was unable to identify any other person/s at the lineup, as Dispenza was the only person who had actually confronted him during the course of the occurrence. On October 19, 1963, a written confession was taken from Dispenza which named French, the defendant, and a man he knew only as Gino, as his accomplices in the robbery. The confession detailed the procedure employed by the four during the commission of the offense. Dispenza stated in the confession that he was 21 years old and that he had received a one-year education in his native country. He, however, stated in the confession that he could read English but that he had difficulty writing it. Dispenza took

412

about four to five minutes to read the three-page statement and then placed his signature on each page thereof.

The same day the confession was obtained, Police Officers Mason, Walker, and Gushi proceeded to the Cook County Jail where they had learned that defendant was being held on another and unrelated charge. As of this time, defendant was represented only by counsel relative to the charge he was then under indictment and in custody for. No appearance of counsel had, as yet, been filed relative to the instant charge. Upon request, the three officers received the defendant's oral and written permission to be interviewed. The interview took place in the conference room of the jail. No physical contact is permitted between inmates and visitors, nor are they allowed to hand objects to one another. The interview took place in absence of counsel and lasted approximately 45 minutes.

Officer Walker, called on behalf of the State, testified that at the interview he informed defendant that the three were police officers and that he had been implicated in the robbery of the Museum, together with French and Yocca in a confession made by Bruno Dispenza. Walker stated that he then handed the confession to a jail clerk who presented it to defendant. He testified that after having read the confession, defendant made the remark, "Well—you've got the right men, now prove it." Defendant, thereafter, acknowledged his acquaintance with Dispenza, French and Yocca. Defendant then told Walker that he had called a Chicago newspaper to notify them of the robbery and had attempted to negotiate with them as to the proceeds of such robbery. Walker continued, stating that defendant said that "he would like to make a deal with us, because we did not have all the merchandise that was taken from the Museum." Asked what items were missing, Walker testified that defendant replied,

"You don't have the gun. You haven't got the chalice and a small cross." Thereafter, defendant expressed his desire to meet with the officers the following Monday in Judge Wells' courtroom, where he would be on trial, to discuss a "deal."

Walker testified that the following Monday he, Commander Johnson, and Officer Mason sought and obtained defendant's permission to be interviewed in the jury room of Judge Wells' courtroom. The policemen again identified themselves and asked defendant what kind of a "deal" he was looking for. Walker stated that defendant said that he wanted to "walk" in exchange for the return of the merchandise missing from the Museum because he was the only one who knew of its location. Defendant, once again, identified the missing pistol taken from the Museum. This interview lasted approximately 15 to 20 minutes.

Commander Johnson, called on behalf of the State, testified as to this same interview. He stated that he handed Dispenza's confession to defendant who, after paging through it slowly, stated, "Well, your whole case rests with Bruno Dispenza. All we have to do is get him out on bond and we'll hit him, and your case goes with him." Asked by Johnson what sort of a "deal" did he wish, defendant stated, "I want to walk free from this robbery charge." Johnson inquired, "The Museum case?" Defendant replied, "Yes." Again defendant made the remark, "You've got the right guys, now prove it." This second interview, like the first, was made outside the presence of counsel, however, defendant had not, as yet, been indicted nor obtained counsel relative to the instant offense. Neither defendant nor Dispenza testified at the trial.

Throughout the foregoing testimony of Walker and Johnson, the record is replete with objections by defense counsel that any statements made by defendant to the interviewing officers is inadmissible as hearsay. Fur-

thermore, defense counsel voiced strenuous objection to the introduction into evidence of Dispenza's confession because it was based upon hearsay and was never adopted by defendant, hence inadmissible against defendant. Defense counsel also objected to the introduction into evidence of People's Exhibits 1 thru 25 inclusive (the stolen goods) and the giving of certain instructions to the jury. These objections were overruled.

It is defendant's theory of the case that numerous errors warranting reversal were committed in the court below; to wit, (1) the admission into evidence of defendant's self-incriminating response to Dispenza's confession, in absence of counsel, violated his fifth, sixth, and fourteenth amendment constitutional rights, (2) the admission into evidence of Dispenza's confession was hearsay, having never been adopted by defendant, (3) the court improperly instructed the jury as to the law applicable, (4) the court erred in admitting exhibits of allegedly stolen goods which were not recited in the indictment, (5) defendant was prejudiced by a reference, made by a state's witness, to defendant's indictment for another crime, (6) defendant was prejudiced by remarks of the trial judge made in the presence of the jury, (7) the State failed to prove the necessary elements of the offense charged in the indictment, and (8) defendant was prejudiced by the prosecutor's remarks during closing argument.

It is the State's theory of the case: (1) that defendant's incriminating remarks were admissible, (2) that defendant's remarks constituted an adoption of Dispenza's confession thus rendering that statement admissible against him, (3) that the instructions given correctly reflected the applicable law, (4) that all the items taken in the robbery were properly admitted into evidence, (5) that defendant was not prejudiced by the unsolicited testimony of another crime, (6) that defendant cannot complain of the trial judge's remarks because they were

made to rebuke defense counsel's misconduct, (7) that the evidence is sufficient to support the indictment, and (8) that the closing argument of the State was proper.

Points (1), (2) and (8) of defendant's theory shall be discussed together because they necessarily relate to one another. Defendant initially relies upon the landmark decisions of Escobedo v. Illinois, 378 US 478 (decided 6/22/64) and Miranda v. Arizona, 384 US 436 (decided 6/13/66). He submits that the subsequent decision of Johnson v. New Jersey, 384 US 719 (decided 6/20/66), which refused to afford retroactive application to the constitutional safeguards promulgated in Escobedo and Miranda, is not binding on state courts. Defendant points out that the Johnson decision was based upon the prospective disruption to the administration of justice in federal proceedings only. It is his contention that such a policy decision is not controlling in state courts who are free to determine their own administrative guidelines.

Defendant, in this conjunction, relies upon the case of People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33 (1964), wherein the Illinois court took cognizance of the Escobedo doctrine and did not, thereafter, establish any rule of nonretroactivity. Hartgraves was decided long before the formulation of the nonretroactivity rule in Johnson. At no time in Hartgraves did our court render any express determination relative to retroactive application. To the contrary, the court there simply cited Escobedo and distinguished it on the facts. Moreover, Hartgraves cannot be accepted as authority for a tacit retroactive application of Escobedo and Miranda in Illinois in view of numerous subsequent cases which have expressly held to the contrary. People v. Latimer, 35 Ill2d 178, 220 NE2d 314 (1966), People v. Williams, 36 Ill2d 194, 222 NE2d 321 (1966), People v. Ostrand, 35 Ill2d 520, 221 NE2d 499 (1966), People v. Kirk, 36 Ill2d 292, 222 NE2d 498 (1966). Defendant's trial having commenced prior to the effective dates of Escobedo

416

and Miranda respectively, he cannot be heard to avail himself of the constitutional guidelines therein established.

Defendant next contends that he has been deprived his constitutional rights as a consequence of the interrogating officers' attempts to elicit incriminating statements from him outside the presence of his counsel. He further objects to having never been informed of his rights to remain silent and assistance of counsel by such officers.

■ The principal cases relied upon to support this contention are Spano v. New York, 360 US 315 (1959), Massiah v. United States, 377 US 201 (1964), People v. Halstrom, 34 Ill2d 20, 213 NE2d 498 (1966), and McLeod v. Ohio, 381 US 356 (1965). A detailed analysis of these cases is unnecessary. They concur in the fundamental principle that self-incriminating words, deliberately elicited by state authorities, relative to the offense that the defendant is then under indictment for, when made in the absence of counsel, are inadmissible at the subsequent trial of that defendant for that offense.

Defendant's contention is not well taken in regard to the aforementioned principle. The reasoning is twofold. First, defendant was not at the time of the interviews represented by counsel relative to the offense which was the subject matter of the questioning. Second, and of pivotal significance, is the fact that, notwithstanding the deliberate attempts of the officers to elicit the remarks, defendant was at the time neither indicted nor arraigned for the offense to which the questioning related. The fact that defendant was under indictment and pending trial for another and unrelated offense is of no consequence, hence the inapplicability of the Massiah doctrine and the cases supporting it. People v. Lagardo, 82 Ill App2d 130, 226 NE2d 486.

■ Defendant next challenges, for the first time, the voluntariness of his admissions. This objection was

417

never raised in a pretrial motion to suppress nor called to the attention of the lower court at any time during the trial. Nor has the question of voluntariness been included within defendant's post-trial motions.

The physical surroundings in the County Jail and court-room certainly minimize the possibility of any bodily contact or threat thereof. Defendant's self-incriminating responses are not alleged to have been procured by false promises of compromise. There is no question of prolonged detention or seclusion. Defendant consented to both interviews and actively procured the latter of the two. It was defendant who was the moving party in seeking to consummate a "deal." Unlike Escobedo, defendant was at no time denied an affirmative request for assistance of counsel. In a situation such as the instant case where Escobedo and Miranda guidelines do not attach, our highest court in People v. Jackson, 35 Ill2d 162, 220 NE2d 229 (1966), has recently said:

> . . . the failure to warn an accused that he may remain silent and, in the absence of a request for counsel, a failure to inform an individual of his right to counsel during interrogation by police, do not render statements made to the police involuntary per se. . . .

Here, the attendant circumstances, where defendant has offered no evidence to the contrary save a barren allegation of involuntariness on appeal for the first time, can warrant no other conclusion by this court but that the statements were made voluntarily.

Defendant next vehemently argues that the admission of Dispenza's confession into evidence against defendant was hearsay and prejudicial, such confession never having been adopted by him. The issue thus presented is, notwithstanding the admissibility of defendant's remarks as independent admissions of guilt, did the statements

operate concurrently as an adoption of the confession of an out of court declarant.

██ ██ The State contends the controlling cases on the subject of adoption are People v. Hanson, 31 Ill2d 31, 198 NE2d 815 (1964) and People v. Somerville, 71 Ill App2d 381, 219 NE2d 116 (1966). The Hanson and Somerville cases have concurred in the general principle of law that an incriminating extrajudicial statement made by an accomplice, if admitted to be true by the accused, becomes the latter's by adoption and is admissible in evidence against him at the subsequent trial. Cf. People v. McCasle, 35 Ill2d 552, 221 NE2d 227 (1966), People v. Saisi, 24 Ill2d 274, 181 NE2d 68 (1962). The Hanson court, in considering a charge leveled at the voluntariness of the extrajudicial statement (which parallels a similar allegation made by defendant here), went even further. There the court said:

> If the defendant voluntarily adopted the statement as his own, the motives or purposes of . . . (the declarants) . . . for giving the statements are immaterial and irrelevant in defendant's trial. (Insert supplied.)

Notwithstanding the collateral issues of voluntariness raised by defendant, this court is of the opinion that the factual circumstances by which the alleged adoption was obtained do not, under the law on the subject, warrant the conclusion that defendant made Dispenza's confession his own.

In each case cited above (Hanson, Somerville, McCasle and Saisi) the adopting language was made by the defendant while in the physical presence of the person/s who was purported to have implicated him in the commission of a criminal offense. In the case at bar, Dispenza's confession was simply shown to defendant by the interrogating officers, on both occasions outside the presence of Dispenza.

In Hanson, the defendant admitted, in the presence of a court reporter, that 99% of the statement was true. When asked if he was the man who hit the decedent with the pipe, defendant replied, "I did, yes, . . . ." Moreover, the defendant there had initialed each page of his accomplice's confession and affixed his signature thereto. In Somerville, defendant, Langusch, after having the statement read to him, "said that it was true." In McCasle, the defendant, upon hearing an accomplice's admission of the robbery, "admitted that he, too, had participated in the commission of the offense." In Saisi, the defendant made a general denial of the truth of the contents of a joint statement and called the declarant a liar. Subsequent thereto however, defendant testifying in her own behalf, admitted the truth of portions of the declarant's statement. The court there said that only those portions admitted should have been allowed into evidence, but the trial having been conducted without a jury, the trial judge was presumed to have only considered competent evidence.

Here, the only words alleged to have operated as an adoption were defendant's remark, "Well—You've got the right men, now prove it." While the remark could be construed to be a tacit admission of the truth of Dispenza's confession, the language employed by defendant was not so embracing so as to admit complicity in every respect. Suffice to say, the allegedly adopting language of the instant case is not as strong and unequivocal as that found in the cases relied upon by the State.

The prejudicial effects of allowing an alleged confederate's confession to go to the jury, where the defendant was tried alone, is further compounded by the fact that the confession was the only link between defendant and the commission of the robbery. The State's lone eyewitness saw only Dispenza in the Museum. Dispenza, likewise, was the only person whom the witness could identify at the police lineup. No independent testimony

was offered which would have placed defendant in proximity to the Museum on the morning in question, nor were any of the fruits of the robbery ever found to be in defendant's possession.

The general rule which has been repeatedly adhered to by our courts was stated in People v. Tunstall, 17 Ill 2d 160, 161 NE2d 300 (1959) where the court said:

> . . . the law is well settled that confessions or admissions of a co-defendant, or those of a witness against an accused, are not admissible in evidence against such accused *unless made in his presence and assented to by him.* . . .

> . . . the . . . confession or statement made outside the presence of a defendant is not competent, even for the purpose of impeachment, where such statement or confession bears directly upon a defendant's guilt or innocence of the crime, and is likely to have a prejudicial influence on the minds of the jury. (Emphasis supplied.)

People v. Childress, 1 Ill2d 431, 115 NE2d 794 (1953), People v. Hundley, 4 Ill2d 244, 122 NE2d 568 (1954), People v. Buckminster, 274 Ill 435, 113 NE 713 (1916). This rule requiring presence and assent was held to apply whether or not the parties involved are jointly tried in People v. Clark, 17 Ill2d 486, 162 NE2d 413 (1959). In Clark, like in the case at bar, the declarant did not testify at the trial. In considering the question the court reasoned:

> With his codefendant refusing to testify on the grounds of self-incrimination, plaintiff in error was, . . . left powerless to rebut or inquire into the obvious hearsay testimony. . . .

Cf. People v. Smuk, 12 Ill2d 360, 146 NE2d 32 (1957), People v. Childress, supra.

421

Defendant was not afforded a fair trial on the charges brought against him. As the court in People v. Buckminster, supra, said:

> The admission of improper testimony that would have a tendency to warp or prejudice the minds of the jury can hardly be considered harmless on this record. . . . It would be impossible to decide with certainty as to whether it would or would not unconsciously affect the jury as to their verdict. If from the legal evidence admitted they had any doubt as to the guilt of plaintiff in error, the jury would not find it easy, or perhaps possible, to remove from their minds the impression produced by this confession.

The reasoning employed in Buckminster is squarely applicable to the adverse effects Dispenza's confession had upon the minds of the jurors in the instant case. Nor can it be argued that the proffered cautionary instruction on the subject cured the defect, as the prejudice, once wrought, cannot be eradicated. People v. Clark, supra. A further discussion of the errors assigned by defendant will not be necessary in view of our disposition of his appeal.

For the above reasons, the judgment is reversed and the cause remanded for a new trial.

Judgment reversed and remanded for new trial.

BURKE and BRYANT, JJ., concur.