**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Martin SCHWIMMER,**
**Defendant–Appellant.**

**No. 1116, Docket 89–6048.**

United States Court of Appeals,
Second Circuit.

Argued April 12, 1989.

Decided Aug. 1, 1989.

See also, D.C., 706 F.Supp. 6.

Alan M. Dershowitz, Cambridge, Mass. (Nathan Z. Dershowitz, Victoria B. Eiger, Dershowitz & Eiger, P.C., New York City, of counsel), for defendant-appellant.

Matthew J. Brief, Sp. Atty., Organized Crime Strike Force, E.D.N.Y., Brooklyn, N.Y., (Bruce Maffeo, Sp. Atty., Organized Crime Strike Force, E.D. N.Y., Andrew J. Maloney, U.S. Atty., E.D. N.Y., Edward A. McDonald, Atty.-in-Charge, Organized Crime Strike Force, E.D. N.Y., Brooklyn, N.Y., of counsel), for plaintiff-appellee.

Before NEWMAN, CARDAMONE and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

The principal issue on this appeal is whether a defendant who has been tried, convicted, and whose appeal is pending may be granted use immunity and then be compelled to testify before a grand jury on matters that were the subject of his conviction, even though his appeal may result in a retrial of those offenses about which he gave compelled testimony. We believe the testimony of such a defendant may be compelled. Hence, we affirm.

## I FACTS

Appellant Martin Schwimmer takes this expedited appeal from a March 14, 1989 order of confinement imposed pursuant to 28 U.S.C. § 1826(a) (1982) in the United States District Court for the Eastern District of New York (McLaughlin, J.). The order appealed from resulted from Schwimmer's refusal, after having been granted use immunity pursuant to the provisions of 18 U.S.C. § 6002 (1982), to testify before a grand jury.

On June 16, 1987 a grand jury sitting in the Eastern District of New York indicted Schwimmer for receiving illegal employee benefit plan payments, 18 U.S.C. § 1954 (1982), engaging in a racketeering conspiracy, 18 U.S.C. § 1962 (1982), and tax evasion, 26 U.S.C. § 7201 (1982). Appellant entered a plea of not guilty, elected not to testify at his jury trial, and was convicted of the charged offenses. The convictions derived from his management of $100 million of assets for the benefit plans of two New York unions—Local 810 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and Local 38 of the Sheetmetal Workers International Association of the AFL–CIO—from which he skimmed $14 million in concealed commissions. In addition to the receipt of illegal payments from the funds, appellant was convicted under the RICO count of making millions of dollars in payoffs to various Local 810 officials.

Following his conviction, Schwimmer was sentenced on February 14, 1989 to 10 years imprisonment, fined $1.6 million, and ordered to forfeit $4.5 million. At the close of the sentencing proceedings, he was served with a subpoena that demanded his appearance before a grand jury investigating the criminal activities of the union offi-

cials to whom Schwimmer had made illicit payments. The government has represented to us that the grand jury before which appellant's testimony is sought is not the same grand jury that indicted him, though the same Assistant United States Attorney who prosecuted him is handling the current grand jury matter.

On the adjourned return date of the subpoena, Schwimmer appeared and was served with a February 22, 1989 order of Chief Judge Platt of the Eastern District directing him to testify under grant of use immunity. The testimony sought to be elicited related primarily to the participation of various union officials in the kickback schemes that were the subject of appellant's conviction. Schwimmer's judgment of conviction is currently on appeal before this Court. *See United States v. Schwimmer*, No. 89–1106 (2d Cir. appeal docketed Mar. 9, 1989). Despite the grant of immunity, Schwimmer refused to testify. Instead, he invoked his rights under the Fifth and Sixth Amendments to the United States Constitution, and also asserted that it was ethically improper for the prosecutor to question him before the grand jury without his attorney being present.

A hearing regarding appellant's refusal to testify was scheduled for March 14, 1989 before Judge McLaughlin, who had presided over Schwimmer's trial. Prior to the hearing, appellant moved to quash the subpoena on constitutional grounds. The government, in turn, moved for a finding of contempt and for a summary order of confinement pursuant to 18 U.S.C. § 1826. After oral argument, Judge McLaughlin denied Schwimmer's constitutional claims, concluding that his Fifth Amendment right to be free from self-incrimination was fully protected by the terms of Chief Judge Platt's immunity order, and that the Sixth Amendment merely guaranteed appellant the right to have his attorney present for consultation outside the grand jury room—a right of which he had availed himself. Further, with respect to the effect of the compelled testimony on Schwimmer's appeal, the district court ruled that there was no denial of the effective assistance of counsel because none of appellant's compelled testimony could be used by the government in any proceedings, including his appeal or subsequent retrial. Accordingly, it held appellant in contempt for his unjustified refusal to testify before the grand jury and entered the order of confinement. The district court also determined that an expedited appeal from its order would neither be frivolous nor taken for purposes of delay. It therefore granted bail pending our resolution of the issues raised by Schwimmer's appeal. *See* 28 U.S.C. § 1826(b) (1982).

## II  DISCUSSION

Appellant raises three separate challenges to the order of confinement. He argues that questioning a convicted defendant before a grand jury about the events that are the subject of his conviction while his appeal is pending is an abuse of the grand jury process that violates (1) his Fifth Amendment right against self-incrimination, (2) his Sixth Amendment right to the effective assistance of counsel, and (3) the provisions of the Code of Professional Responsibility prohibiting lawyers from communicating directly with opposing parties known to be represented by counsel. In essence, Schwimmer asserts that granting him use immunity under 18 U.S.C. § 6002 will not cure the constitutional transgressions that will occur if he is required to testify. These arguments present a congeries of interrelated constitutional considerations. For purposes of clarity, we address each contention in order.

### A.  *Fifth Amendment*

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V, cl. 3. Appellant's principal contention is that the grant of use immunity is insufficient to protect this right if he is compelled to testify while his appeal is pending. Speculating about the possibility of a retrial and about prospective non-evidentiary use by the government of his coerced, immunized testimony Schwimmer asserts that there is no means

of preventing such improper use short of adopting a "prophylactic" rule that would bar compulsion of the testimony in the first instance.

We begin discussion by analyzing the purpose of immunity statutes. The Supreme Court has repeatedly noted that such statutes are "part of our constitutional fabric." *Ullmann v. United States*, 350 U.S. 422, 438, 76 S.Ct. 497, 506, 100 L.Ed. 511 (1956) (quoted in *Kastigar v. United States*, 406 U.S. 441, 447, 92 S.Ct. 1653, 1657, 32 L.Ed.2d 212 (1972)). As recognized in *Kastigar*, they seek to strike a balance between constitutional protections against compulsory self-incrimination and the government's power to enforce the criminal laws effectively by compelling testimony before grand juries. 406 U.S. at 446, 92 S.Ct. at 1656. The constitutionality of the use immunity statute—18 U.S.C. § 6002—here at issue, has been upheld by the Supreme Court, which stated that the grant of such immunity must afford the witness protection commensurate with that which would have resulted had he been permitted to invoke the Fifth Amendment privilege against self-incrimination. *Id.* at 452–53, 92 S.Ct. at 1660–61. Stated another way, the grant of immunity must leave the witness " 'in substantially the same position as if the witness had claimed his privilege' in the absence of a grant of immunity." *Id.* at 458–59, 92 S.Ct. at 1664 (quoting *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964)).

This rule permits the compulsion of incriminating testimony, but bars any use—derivative or otherwise—of the testimony so obtained. Section 6002 provides a "sweeping proscription" of any direct or indirect use of the testimony, including its use as an investigatory lead, or as a means of focusing an investigation on the witness. *See Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1664. Further, once the witness has testified under a grant of immunity, the government bears the burden of demonstrating that its proof in a subsequent proceeding was derived from a wholly-independent source, untainted by the immunized testimony. *See Murphy*, 378 U.S. at 79 n. 18,

84 S.Ct. at 1609 n. 18. A defendant raising a claim that the provisions of § 6002 have been violated "need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." *Kastigar*, 406 U.S. at 461–62, 92 S.Ct. at 1665.

Hence, we hold that *Kastigar* and the cases that followed it refute appellant's Fifth Amendment claim. So long as the government proves that its evidence at any subsequent retrial is derived from sources independent of the immunized testimony, the grant of use immunity to obtain testimony from a convicted defendant whose appeal is pending does not violate the Fifth Amendment. Other circuits have reached the same conclusion. *See United States v. Kember*, 648 F.2d 1354, 1362–63 (D.C.Cir. 1980) (per curiam); *United States v. Pantone*, 634 F.2d 716, 719 (3d Cir.1980); *In re Liddy*, 506 F.2d 1293, 1301 (D.C.Cir.1974) (en banc); *United States v. Kelly*, 464 F.2d 709, 712–13 (5th Cir.1972); *see also United States v. Wilson*, 488 F.2d 1231, 1233 (2d Cir.1973) (holding that use immunity is a sufficient answer to the Fifth Amendment claim of a defendant who has pled guilty, but has not yet been sentenced), *rev'd on other grounds*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).

In fact, any retrial would itself provide a unique gauge by which the government's compliance with the dictates of *Kastigar* could be measured. That is to say, in the event of reversal on appeal and defendant's retrial, the transcript of the evidence at the first trial would furnish a record against which to compare the government's proof at the second trial. Armed with that record, the trial court could readily determine whether the government had deviated from the proof offered during the first trial and could then require the government to carry its burden of proving that any evidence not presented at the first trial was derived from sources wholly independent of the immunized testimony. *See, e.g., Pantone*, 634 F.2d at 719. Thus, any subsequent claim by appellant that the govern-

ment had made any use of his immunized testimony at a putative retrial would be subjected to the district court's evaluation of whether the government had met its burden of showing that the challenged proffer was derived from independent sources. *See United States v. Gallo*, 859 F.2d 1078, 1083 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 986 (1989); *United States v. Mariani*, 851 F.2d 595, 601 (2d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1654, 104 L.Ed.2d 168 (1989).

The primary case relied upon by appellant for the proposition that compulsion of his testimony is barred by the Fifth Amendment is *United States v. Doss*, 563 F.2d 265 (6th Cir.1977) (*en banc*). *Doss* is readily distinguishable from the instant appeal. There a defendant who was the subject of two sealed indictments was called as a witness before a grand jury and questioned regarding the crimes with which, unbeknownst to him, he had already been charged. In that case, the Sixth Circuit concluded that it was "clear ... that the government deliberately and purposefully employed the grand jury in questioning an already indicted defendant about the crime for which he was soon to be tried." *Id.* at 271. It condemned the prosecutor's use of the grand jury process as a discovery device, ruling that such abuse violates a defendant's Sixth Amendment right to counsel and his Fifth Amendment right to due process. *Id.* at 276.

Here, we discern no such improper motive on the government's part. The purpose of calling appellant before the grand jury is to obtain information regarding the identity of unapprehended individuals allegedly involved with him in the conspiracy as recipients of the payoffs. Unlike *Doss*, we cannot conclude that the government's actions were taken for the impermissible purpose of gathering evidence against the appellant-witness. In short, appellant's challenge to the order on Fifth Amendment grounds fails because the grant of immunity removes the risk of incrimination and makes that Amendment inapplicable.

■ Before leaving the discussion of the Fifth Amendment, we add a final comment.

Although, as noted, the record of the first trial supplies the necessary safeguard against which to compare any overt prosecutorial change in strategy undertaken at a second trial, concern remains that access to and knowledge of possibly self-incriminating grand jury testimony might affect a retrial in subtle ways, not immediately perceptible either to the district judge or to subsequent panels of this Court. In the case at bar, for example, the non-evidentiary use of the compelled testimony—so disquieting to appellant—is use that might assist the prosecutor in focusing additional investigation, planning, cross-examination, or otherwise generally mapping a strategy for retrial. *See United States v. McDaniel*, 482 F.2d 305, 311 (8th Cir.1973). Even though the issue will not ripen unless and until Schwimmer's conviction is reversed and he is retried, we think that the government should consider taking steps to ensure that any subsequent proceedings are not tainted by individual prosecutorial access to the coerced testimony. Without deciding the issue, it would appear prudent for the government in the event of a retrial to establish a so-called "Chinese Wall" between its prosecutors exposed to the present grand jury testimony—the ordering of which is the subject of this appeal— and those prosecutors who may be assigned to retry defendant. *See United States v. Semkiw*, 712 F.2d 891, 895 (3d Cir.1983) (adopting such approach); U.S. Dep't of Justice, United States Attorneys' Manual § 1–11.400, at 21 (1987) (to demonstrate that *no* non-evidentiary use has been made of the compelled testimony, prosecution should be handled by an attorney unfamiliar with its substance).

### B. *Sixth Amendment*

■ Appellant's next contention is that his testimony before the grand jury without counsel present while his appeal is pending violates his Sixth Amendment right to the effective assistance of counsel. This claim raises an issue of first impression in this Circuit. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."

U.S. Const. amend. VI. Because Schwimmer is the subject of ongoing adversarial proceedings—currently on appeal to this Court—there is no doubt that his right to the effective assistance of counsel has attached. *See, e.g., United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984); *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972); *Powell v. Alabama,* 287 U.S. 45, 69–70, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). His right to the assistance of counsel continues during the pendency of his appeal. *See Evitts v. Lucey,* 469 U.S. 387, 404–05, 105 S.Ct. 830, 840, 83 L.Ed.2d 821 (1985); *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). Thus, appellant asserts that any questioning by the prosecutor outside the immediate physical presence of his counsel violates the Sixth Amendment. We cannot agree.

In *United States v. Mandujano,* 425 U.S. 564, 581, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976), the Court observed that a grand jury witness who had a right to the assistance of counsel could not insist that his attorney accompany him into the grand jury room. Appellant claims that his conviction raises entirely different Sixth Amendment concerns unaddressed by *Mandujano* because no criminal proceedings had been instituted against Mandujano. Schwimmer then directs our attention to *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), where the Supreme Court stated that "[a]ny secret interrogation of the defendant, from and after the finding of the indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime." *Id.* at 205, 84 S.Ct. at 1202 (quoting *People v. Waterman,* 9 N.Y.2d 561, 565, 216 N.Y.S.2d 70, 175 N.E.2d 445 (1961)). Relying on this language in *Massiah,* appellant contends that had criminal charges been brought against Mandujano, he would have been entitled to have counsel accompany him in the grand jury room. Thus, because he has already been indicted and convicted, and his appeal is pending, the argument goes, he too has an absolute right to his lawyer's presence when questioned.

Schwimmer's arguments overlook the fact that, unlike the defendant in *Massiah,* he has been granted use immunity under § 6002 in exchange for his testimony. Thus, the rationale of *Kastigar* completely answers appellant's constitutional objections: no valid constitutional objection lies so long as the government cannot use the compelled testimony against Schwimmer in any fashion. Accordingly, a defendant's right to counsel when a grand jury appearance is at issue extends only to the right to consult counsel outside the grand jury room. Here Schwimmer had the right to leave and did leave the grand jury room for consultations with his attorney. The protections inherent in a grant of use and derivative use immunity under § 6002 are sufficient to defeat appellant's constitutional challenges to the compulsion of his testimony in the grand jury room, outside the immediate physical presence of counsel. *Cf. United States v. Kember,* 648 F.2d 1354, 1363–64 (D.C.Cir.1980) (per curiam) (rejecting argument that coerced immunized testimony intruded upon attorney-client relationship).

Appellant's additional arguments under the Sixth Amendment are without merit. First, contrary to Schwimmer's contention, the attorney-client relationship will not be impermissibly encroached upon by the compulsion of his testimony. Nothing that we decide can be read to proscribe Schwimmer's proper invocation of the attorney-client privilege. *See United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). In any event, the answers sought to be elicited concern matters that transpired prior to the initiation of an attorney-client relationship between appellant and his present counsel of record.

■ Second, Schwimmer contends that his answers in the grand jury may ethically foreclose his counsel from making arguments concerning his innocence on appeal. We recognize that it is a powerful argument for counsel to stand before an appellate tribunal and represent that his client is innocent. The common law has historically been imbued with the belief that "it is better that ten guilty persons escape, than

that one innocent suffer." 4 W. Blackstone, *Commentaries on the Laws of England,* ch. 27 (1769), which capsulizes a similar notion Voltaire expressed two decades earlier. Yet, at the same time it is essential to the just administration of the criminal law that the guilty be swiftly and certainly subject to punishment. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harv. L.Rev. 441, 452 (1963). We understand counsel's argument to mean that his client is innocent of the crimes charged, in other words, not guilty beyond a reasonable doubt of those crimes in light of the evidence that was properly or should properly have been before the jury. His opportunity to argue that his client is not guilty is not diminished by Schwimmer being compelled to testify. Counsel's point amounts to nothing more than that—like an ostrich hiding its head in the sand—if counsel does not hear or know of his client's guilt, he can proclaim his innocence. Even if appellant's truthful answers before the grand jury establish his guilt, and even assuming counsel thereafter learns of those answers, Schwimmer's appellate attorney certainly is not foreclosed from raising arguments concerning the sufficiency of the government's proof at trial that established appellant's guilt. In fact, counsel would be ethically *obligated* to raise such arguments regardless of his knowledge or lack of knowledge of his client's innocence.

In sum, the use and derivative use immunity afforded Schwimmer pursuant to § 6002 adequately protects against any infringement of his Sixth Amendment rights. His testimony has not been sought as an impermissible discovery device as was the case in *Doss,* his attorney will be available for consultation at all times outside the grand jury room, and he can invoke the attorney-client privilege whenever necessary and appropriate. Thus, the compulsion of Schwimmer's testimony before the grand jury under a grant of immunity does not infringe his Sixth Amendment right to the effective assistance of counsel.

### C. *Code of Professional Responsibility*

Appellant's final contention is that the prosecutor may not question him before the grand jury without violating Disciplinary Rule 7–104(A)(1) of the American Bar Association's Code of Professional Responsibility, *reprinted in* N.Y.Jud.Law app. DR 7–104 (McKinney 1975) that provides:

> A. During the course of his representation of a client a lawyer shall not:
> 1. Communicate or cause another to communicate on the subject of a representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Schwimmer argues that DR 7–104(A)(1) proscribes a prosecutor from questioning before a grand jury a convicted defendant known to be represented by counsel.

This argument fails because Schwimmer's grand jury appearance and questioning fall within the "authorized by law" language of Rule 7–104(A)(1). That is, even though the questioning is without opposing counsel's consent, the prosecutor's actions are clearly "authorized by law" within the contemplation of the language of DR 7–104(A)(1). *Cf.* Fed.R.Crim.P. 6(d) (prohibiting presence of counsel, other than attorneys for the government, inside the grand jury room). As part of a continuing criminal investigation appellant has been lawfully subpoenaed to testify before the grand jury in order to "illuminate the shadowy precincts of corruption and crime." *United States v. Mandujano,* 425 U.S. at 573, 96 S.Ct. at 1775. He is not the target of that investigation, his testimony is immunized pursuant to § 6002, and he may consult with counsel any time outside the grand jury room. Accordingly, the prosecutor's direct questioning of Schwimmer before the grand jury outside the presence of his counsel is authorized by law and therefore does not violate the Code of Professional Responsibility.

Our recent decision in *United States v. Hammad,* 858 F.2d 834 (2d Cir.1988), is not to the contrary. In *Hammad,* a prosecutor provided an informant with a sham subpoena and arranged for the taping of the informant's conversation with the defendant, even though the prosecutor knew the de-

fendant was represented by counsel. *Id.* at 836. When the defendant was subsequently indicted, partly as a result of the recordings made by the informant, we held that the prosecutor had committed an ethical violation, but limited the holding to the circumstances of that case. We declined to adopt a bright line rule delineating when actions would violate DR 7–104(A)(1) and left the question of what constitutes a violation of the ethical standards to be determined on a case-by-case basis. *Id.*

Unlike *Hammad,* we discern here no improper purpose on the prosecutor's part in his subpoenaing Schwimmer to testify. Consequently, because the prosecutor's questioning of Schwimmer before the grand jury is "authorized by law," it does not transgress DR 7–104(A)(1).

### III  CONCLUSION

For the reasons above stated, the order holding defendant in civil contempt and directing his confinement until such time as he testifies before the grand jury is affirmed.